MOISE, Justice.
Mary Young appeals from a decision of the State Civil Service Commission up- ' holding her dismissal as Qiief Accountant of the Charity Hospital of Louisiana at New Orleans.
A statement of fact is urgent and insistent in order to obtain a better understanding of the issues involved.
By the provisions of Article XIV of the Constitution of Louisiana of 1921, as amended by Act 18 of 1952, Section 15 (Q) (3), all employees of, the Chanty Hospital, on June 30, 1953, would acquire permanent Civil Service Status in the class of position that _ they were occitpying. Mary Young had started to work as an apprentice at the hospital, and by giving a loyal allegiance arid faithful service to her work she had been promoted 'to the post of Chief Accountant for .the Charity Hospital at the time of her alleged discharge. A day before this protective permanent Civil Serv *711 ice status became effective, there was a registered letter addressed to her — the contents of which dismissed her from the service of the Charity Hospital. Although Mary Young was absent on leave from June 29, 1953 to July 3, 1953, with the intervening holidays (which the Court will take judicial notice of) July 1, 2, 3, 4 and 5th, she had donated her services to the hospital for June 29, 1953 and worked there from 8:15 in the morning until 3:00 o’clock in the afternoon. The letter in question could have been personally served on her, but the secretary of Dr. Leckert swears that the letter was mailed at the post office a few minutes after 4:00 p. m. on June 29, 1953, after the departure of Mary Young to resume her absence on leave as herein-above stated.
On July 6, 1953, Mary Young returned to the hospital to resume her work. On that day the employee just ahead of her, Mr. Millet, told her of the contents of this letter (the letter not being produced), and in order to prevent any scene she left the hospital. July 6, 1953 is the date the Commission reached a conclusion on which it predicated its findings, as will be shown later.
On July 7, 1953, the registered letter addressed to Mary Young was returned to the hospital not delivered and unopened.
In the meantime, both sides made efforts for an amicable settlement. As long as there was any hope of settlement, Mary Young did not become the aggressor against her employers but was lulled into a sense of security. It is stated in counsel’s brief that all controversy broke down on August 14, 1953. We merely mention such in passing, not as a finding of fact upon which tO' predicate a judgment in this suit, because the real issue before this Court is, under the facts and circumstances, “Was Mary Young legally discharged?”
The Civil Service Commission denies relief on a procedural ground — namely, that appellant did not lodge her appeal within a time limit of 30 days.
As a basis of that decision it uses July 6, 1953 as the date for its calculation. This basis is an error which we will show later.
Although counsel for the appellant complains bitterly that he was not afforded an opportunity to discuss this issue, nor was this technical procedural ground pleaded by the.counsel for the Commission nor the Commissioner in charge, we may observe, after a careful study of the rules, that there is not given or granted to an appellant in a Civil Service suit the right within two' judicial days, similar to a procedure taken in a district court, to file a motion for a new trial or a rehearing. The attorney complains that he was not given the opportunity to present his defense on the newly raised procedural question.
Under the Civil Service Act we cannot declare a procedural rule, having the effect of law, void, because it conflicts with our opinion of policy, expedience or justice. If the rule is passed within the general scope *713 of a Legislature or the Commissioners conferred powers, the Court cannot pronounce it void because not supplemented with additional safeguards as in a court of law, or direct action merely because in our judgment it is contrary to the principles of natural justice.
In its reasons for judgment the Commission has stated:
“Conceding that Miss Young acquired Civil Service status in the class of position she was occupying on June 30, 1953, and conceding that her dismissal or discrimination was without cause (See (N) (1) of Article XIV, Section 15) her right of appeal was lost, at the very latest, thirty (30) days after July 6, 1953. Since the appeal herein was lodged, at the earliest on August 14, 1953, more than thirty (30) days after July 6, 1953, this Commission is of the opinion that it is barred by Rule 13.2. Relief denied.” (Italics ours.)
The Civil Service Commission concedes that on July 6, 1953 Miss Young was discriminated against by her dismissal or removal. They admit that she was blanketed in under the new Civil Service Legislature, (Act 18 of 1952 — Article XIV, Louisiana’s Constitution of 1921, Section 15), which gave her a permanent Civil Service status on June 30, 1953. However, they contend that Miss Young lost all of her rights when she did not appeal within 30 days from July 6, 1953. This was at a time when she had a verbal conversation, on July 6, 1953, with Mr. Millet, a co-worker immediately above her. The registered letter was not exhibited to her, nor was any notice given in writing, nor for the cause of dismissal. Such failure is contrary to Subsection (N) (1) of Act 18 of 1952, Article XIV, Section 15 (N) (1) of Louisiana’s 'Constitution of 1921, which makes it mandatory that:
“No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority, (a) The burden of proof on appeal, as to the facts, shall be on the employee.” (Italics ours.)
On July 6, 1953, the constitutional requirement again was not followed.
From the concessions made and the recorded proof, Mary Young’s discharge on June 29, 1953 and the effort for a second dismissal was void ab initio, and both are such because here we are dealing with public career employees to secure them in a permanent status of Civil Service position. It is a grave matter for the promotion of the general welfare, and the law is also expressive of the public policy of the State. Subsection (N) (1) is a prohibitory law.
Article 12 of the LSA-Civil Code provides :
“Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.”
*715 “Quod ab initio non valet in tractu temporis non convalesait.”
“That which was originally void does not by lapse of time become valid.”
Sandoz v. Sanders, Governor, 125 La. 396, 51 So. 436; Gibson v. Foster, 2 La.Ann. 503.
Neither the Court, nor the Commission, nor the lapse of time could breathe a breath of life into that which is void ab initio in both instances.
In the case of Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, 633, we said:
“Persons cannot by their contracts ‘derogate from the force of laws made for the preservation of public order or good morals/ Revised Civil Code, Article 11. ‘This court has differentiated between absolute nullities in derogation of public order and good morals and those which are established in the interest of individuals. The latter nullities are susceptible of ratification, either expressly or impliedly, and may be prescribed against, while the former are never susceptible of ratification and . can never be prescribed against. Vaughan v. Christine, 3 La.Ann. 328; Ackerman v. Larner, 116 La. 101, 40 So. 581; Doucet v. Fenelon, 120 La. 18, 44 So. 908; Barnes v. Barnes, 155 La. 981, 99 So. 719; and Succession of Henderson, 195 La; 665, 197 So. 267, Whitney National Bank of New Orleans v. Mrs. Anna Schwob, widow of F. T. Bosworth, 203 La. 175, 13 So.2d 782.”
Civil Service was ordained and placed into the Constitution of Louisiana because political campaigns for office in the past have been regarded by the public at large as wars of conquest, wherein, the spoils belong to the victor, in which “all is fair, however flagrantly false.”
It is ordered, adjudged and decreed that the denial of relief in the instant case be reversed and set aside and that Mary Young be reinstated to her former position; and it is further ordered, adjudged and decreed that she be paid her back salary from the date of the alleged dismissal up until final reinstatement.
McCALEB, J., concurs with written reasons.
HAWTHORNE, J., dissents and assigns written reasons.
PONDER, J., absent.