107 So.2d 422 (1958)
236 La. 143
Mrs. Fannie W. BRICKMAN
v.
NEW ORLEANS AVIATION BOARD.
No. 43447.
Supreme Court of Louisiana.
May 26, 1958.
On Rehearing December 15, 1958.
Concurring Opinion December 19, 1958.
*423 Rittenberg, Weinstein & Bronfin, Robert Weinstein, John N. McKay, John A. Shanks, Sylvan Steinberg, New Orleans, for appellant.
Morey L. Sear, Alvin J. Liska, New Orleans, for appellee.
PONDER, Justice.
This is an appeal by Mrs. Fannie W. Brickman from a ruling of the Civil Service Commission, City of New Orleans, affirming her dismissal as Aviation Accountant by the appointing authority of Moisant International Airport.
The appellant was discharged on July 21, 1956 by direction of the New Orleans Aviation Board. J. D. Cruze, Assistant Director of the Board, notified the appellant in a communication dated July 21, 1956 of the board's action in terminating her services and setting forth the reasons therefor, viz.:
"a. Lack of adaptabilityThe New Orleans Aviation Board was compelled to employ another accountant to affect the transition from one fiscal system to a new fiscal system being adopted.
"b. Inability to work with others It was repeatedly demonstrated that *424 you experienced serious difficulty in harmoniously working with contemporaries, internally within the Airport Administration, and externally with other agencies."
After a hearing the Civil Service Commission of the City of New Orleans made the following findings of fact:
"1. For many years prior to her dismissal on July 26, 1956, appellant had been a competent and faithful employee of the City of New Orleans.
"2. In the course of the transition to the accounting system required by the new City Charter, appellant had difficulty in adjusting herself to the change, and she expressed herself to the effect that the transition could not be accomplished.
"3. In the course of the conflicting views which developed between appellant and the City authorities, appellant developed an emotional situation, which contributed at least in part, to the differences between her, her superiors and her fellow employees.
"4. Under all the circumstances it cannot be said that the appointing authority acted without reason in concluding that appellant lacked adaptability, and demonstrated some inability to work with others."
As error the appellant contends that there is no evidence in the record to support the finding of the Commission that she is unadaptable and is unable to work with others; and as further error appellant contends that the punishment of discharge is not consistent with nor warranted by the facts as presented to the Commission.
It appears that the appellant went to work at Moisant Airport on April 1, 1946, as an accountant. She had complete charge and responsibility of all of the records. On May 1, 1954, when the new City Charter went into effect, the Aviation Board was placed therein under the direct authority of the Accounting Office of the City. During the summer of 1955 it was required that the Aviation Board conform to the financial and purchasing requirements of the new charter, requiring that all purchases should clear through the central purchasing department of the city and that all collections and disbursements should clear through the City-Treasurer's office. The Board was required to prepare and submit budgets on forms furnished by the Finance Department of City Hall. As a result the budgets had to be prepared in two ways (1) to comply with what was necessary for the Civil Aeronautical Administration and the regular accounting methods used by the airport and (2) to comply with the requirements of the city charter and the department of finance of the city.
The appellant was employed continuously by the City of New Orleans from January of 1941 until her discharge in July of 1956. The record shows that she was an efficient and conscientious employee until this transition in the methods of accounting became necessary, at which time she could not adjust herself to the change and took the position that the transition could not be accomplished.
There was considerable confusion among all of the employees at the airport at the beginning of the transition and because of this confusion and emotional strain, the appellant attempted to resign in January of 1956 but was persuaded not to do so.
On July 13, 1956 appellant addressed a letter to Mr. Johnson, which was relayed to Mr. Cruze, Assistant Director, stating therein:
"I earnestly request being advised if this situation is to continue. If it isI can't endure it any longer and will guide myself accordingly."
After receiving this letter, Mr. Cruze considered this an ultimatum that either appellant's superior, Mr. McGee, would have to be discharged, or she would resign, appellant and Mr. McGee having been in *425 serious disagreement on many occasions as to the method of transition.
Without reciting the evidence taken in this case, it is sufficient to say that there is evidence supporting the charges made by the appointing authority and we are not presented with a case where there is no evidence to support the charges.
This Court has jurisdiction in these cases only on questions of law under LSA-Louisiana Constitution, Article 14, Section 15 which recites that "The decision of the appropriate Civil Service Commission shall be final on the facts, but an appeal shall be granted to the Supreme Court of Louisiana on any question of law * * *." This Court is without authority to examine the weight of evidence, where there is some evidence to support the finding of the Commission. Jordan v. New Orleans Police Department, 232 La. 926, 95 So.2d 607; Cottingham v. Department of Revenue, 232 La. 546, 94 So.2d 662.
It appears in this case that there is only a question of fact involved and it was the opinion of the Commission that from the evidence it was proved:
"* * * that the appellant did not adapt herself to the proposed change in the accounting system at the Airport, and, in fact, she actually declared that the transition could not be accomplished. In the course of these difficulties appellant's emotional conduct did have effect on her ability to work with others."
After hearing the evidence, the Commission concluded that the appellant had not borne the burden of proving that the appointing authority had acted arbitrarily and without adequate reason, in discharging appellant. As pointed out in the case of Jordan v. New Orleans Police Department, supra, we are without authority to examine into the sufficiency of the evidence to establish adequate reasons for the discharge of an employee.
From a review of the record it does not appear that appellants dismissal was motivated by any personal prejudice or political reasons, nor that it was arbitrary, discriminatory, or capricious.
For the reasons assigned, the ruling of the Civil Service Commission of the City of New Orleans is affirmed.

On Rehearing.
TATE, Justice.
This is an appeal by Mrs. Fannie W. Brickman from a ruling of the Civil Service Commission, City of New Orleans, affirming her dismissal as Aviation Accountant at Moisant International Airport. In our original opinion, the Civil Service Commission ruling was affirmed upon our finding that some evidence found in the record supported the charges for which appellant was discharged.
Full rehearing was granted, however, particularly to give further consideration to appellant's contentions (1) that the written notice constitutionally required before disciplinary action can be taken against a classified employee and sacramental to the validity of such proceedings (Article XIV, Section 15(N) (1), Louisiana Constitution; Day v. Department of Institutions, 231 La. 775, 93 So.2d 1; Young v. Charity Hospital of Louisiana, 226 La. 708, 77 So.2d 13), insufficiently apprised appellant of any legal cause for dismissal and therefore was constitutionally defective; and (2) that even assuming that some disciplinary action was warranted under the facts, the penalty of dismissal imposed on the appellant under the circumstances was discriminatory, unjust, and improper.
Since upon our reconsideration of all issues of this appeal, a majority of the Court has come to the conclusion that the factual findings of the Civil Service Commission themselves show that there was no legal cause proved justifying the dismissal of appellant and that therefore she is entitled to reinstatement, we are not required in reaching our opinion to discuss the above contentions.
*426 But, it may be added, the majority is in accord with the views expressed by Mr. Justice McCaleb's dissent herein concerning the second contention advanced in the application for rehearing: that the Civil Service Commission should and could have reviewed whether the penalty of dismissal imposed upon appellant was just and proper under the facts and commensurate with the asserted cause for the disciplinary action, rather than abdicating such reviewing responsibility because of a sincere and well-intentioned misinterpretation of our holding in Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73. Were it not that no legal cause for disciplinary action is found by us to have been proved, the majority agrees that it would have been necessary to remand these proceedings to said Commission for it to make independent finding of its own whether the penalty of dismissal was proper under the facts and circumstances of the case.
In explanation of the conclusion of the majority that the findings of the Civil Service Commission affirmatively show that no legal cause was proved to justify disciplinary action against the appellant, we deem it advisable to fully recapitulate the circumstances reflected by the findings of fact of the Commission.
Appellant's discharge was communicated to her by a letter of July 21, 1956, from her employee, the New Orleans Aviation Board. Therein, the reasons for termination were set forth as follows:
"a. Lack of adaptabilityThe New Orleans Aviation Board was compelled to employ another accountant to effect the transition from one fiscal system to a new fiscal system being adopted.
"b. Inability to work with othersIt was repeatedly demonstrated that you experienced serious difficulty in harmoniously working with contemporaries, internally within the Airport Administration, and externally with other agencies."
The following factual summation by the Civil Service Commission contains its entire findings of facts insofar as relevant to the question of whether such factual findings support any legal conclusion that a legal cause, within the specifications of the written notice of discharge, existed for disciplinary action against the appellant (the italicization therein is ours):
"The salient evidence discloses that Mrs. Fannie W. Brickman was employed continuously by the City of New Orleans from January of 1941 up to her discharge, and that her record to the date of discharge is untarnished. * * *
"The tenure at Moisant Airport of Mrs. Brickman, a widow, * * * dates back to the opening of that airport during the year 1946. Appellant assisted Walter Ryan of an outside auditing firm in formulating an accounting system for the Airport operations. Her duties included that of cashier, bookkeeper and accountant, and even extended to the preparation of operating budgets and working papers in connection therewith. Although appellant was not a Certified Public Accountant she had studied accountancy in the evening division of Tulane University for two years.
"During the month of June, 1955 Mr. Langstaff informed the appellant that the Airport would have to install a new auditing system in keeping with the provisions of the new charter for the City of New Orleans. This `turn-over' immediately placed additional duties upon the appellant. Appellant worked on many evenings after hours both at the airport and at home, as well as on weekends. There is not the slightest reflection in the record upon her ability or industry.
"The Assistant Director of the Airport, Mr. Randall B. Fowler, died on August 29, 1955 and shortly thereafter Mr. Langstaff retired, thus removing the two top officials above the appellant. The ensuing months found the appellant continuing her top-heavy schedule in her line of duty for the benefit of the Airport, during which she *427 devoted many hours beyond the call of duty.
"* * * it is fair to observe that from the death of Mr. Fowler in August, 1955 through the remainder of the year, appellant was depended upon heavily for supervisory operations as well as attending to her own work. To assist appellant there were several women employees assigned in that office, none of whom had the experience of the appellant.
"Later on Chester McGee was directed by the City to act in a supervisory capacity at the Airport for the transition from the old accountancy method to a new auditing system, in order to mesh with the provisions of the new City charter. Among the requirements of the new City charter were, that all purchases should clear through the central purchasing department of the City, and that all collections and disbursements should clear through the City Treasurer's office. The record contains evidence to the effect that the appellant was not in sympathy with the new system and felt that the old system should be retained, for the reason that it has been recognized as proper practice in airports of other cities, and appellant considered the old system to be adequate. There is also evidence that the appellant felt that it would be impossible, or almost impossible, to install the new system.
"In January of 1956, feeling that the pressure on her was too great, appellant informed Mr. J. D. Cruze (who, in the meantime had been appointed Assistant Aviation Director) that she desired to resign. Mr. Cruze discussed the matter with appellant as a result of which she withdrew her resignation, and he informed her that she would be given a 21-day vacation, her first since 1948.
"The evidence is quite clear that the appellant and McGee did not get along from the start, appellant contending that she had sought to indoctrinate McGee but that Mc-Gee had refused to take heed. The evidence further shows that McGee was sent to the Airport in a supervisory capacity and that appellant, while recognizing that McGee was placed above her, felt that Mc-Gee was incompetent to handle the task assigned to him. McGee made several threats to appellant to report the matter to the Assistant Aviation Director.
"The evidence discloses that several women employees had become dissatisfied with working conditions brought on by the appellant's behaviour.
"Appellant, on the stand, admitted that there was tension throughout the office and further stated that she found co-operation with the City Hall to be impossible. Appellant declared that the strain of the circumstances reacted on her so as to render her emotional at various times. * * *
"There is no doubt that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty. The demands of the various air lines on Moisant International Airport have increased 17% each year for the past few years. The appellant was under pressure during that entire tenure. In the light of appellant's commendable record of her employ with the City, the case is not without its difficult points for this Commission to decide.
"Appellant has undoubtedly been a valuable and respected city employee for many years. The record is clear, however, that appellant assumed an uncompromising attitude toward the new accounting methods called for by the City charter and declared that the transition could not be accomplished.* * *
"It is fundamental that since the Airport is owned and operated by the City of New Orleans, the controlling authority on all administrative matters including accounting methods, is the City charter itself, which is binding on all citizens including city officials. It was incumbent upon appellant to adjust herself to the change. This she failed to do. Appellant was entirely devoid of any right to resist or even *428 question the propriety of the new system required by the City charter.
"During the course of the difficulties in question, it is also clear that ill feeling developed between the appellant and other employees.
"The Commission must therefore conclude that the appellant did not adapt herself to the proposed change in the accounting system at the Airport, and, in fact, she actually declared that the transition could not be accomplished. In the course of these difficulties appellant's emotional conduct did have effect on her ability to work with others."
The following summary of the factual conclusions of the Commission is found as its formal "Finding of Facts" (italics ours):
"1. For many years prior to her dismissal on July 26, 1956, appellant had been a competent and faithful employee of the City of New Orleans.
"2. In the course of the transition to the accounting system required by the new City Charter, appellant had difficulty in adjusting herself to the change, and she expressed herself to the effect that the transition could not be accomplished.
"3. In the course of the conflicting views which developed between appellant and the City authorities, appellant developed an emotional situation, which contributed at least in part, to the differences between her, her superiors and her fellow employees.
"4. Under all the circumstances it cannot be said that the appointing authority acted without reason in concluding that appellant lacked adaptability, and demonstrated some inability to work with others."
Our Constitution provides that a classified employee shall not be subject to disciplinary action "except for cause, expressed in writing by the appointing authority." Art. XIV, Sec. 15(N) (1), La. Constitution. As we stated in Cottingham v. Department of Revenue, 232 La. 546, 94 So.2d 662, 665, there must be a "real and substantial relation between the assigned caused for the dismissal of appellant (employee) and his qualifications for the position in which he served," otherwise "the action of the Commission in upholding his removal would, of course, be arbitrary and hence subject to annulment by this court as a matter of law." An assigned reason for disciplinary action does not of itself provide good cause therefor in the absence of a showing of some relationship between the assigned reason and prejudice to the efficiency of the public service. Dickson v. Department of Highways, 234 La. 1082, 102 So.2d 464.
In applying these principles to review of the present ruling of the Civil Service Commission, preliminarily it must be observed that the Commission, far from finding after a full hearing that the conduct upon which the discharge is founded has a reasonable relationship to an administrative conclusion that the employee's retention is prejudicial to the efficiency of the service in which employed, expressly and repeatedly negatived such finding. The Commission found that "her (the appellant's) record (as a city employee) to the date of discharge is untarnished"; that "There is not the slightest reflection in the record upon her ability or industry"; "that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty"; that "prior to her dismissal on July 26, 1956, appellant had been a competent and faithful employee of the City of New Orleans."
While as noted in our original opinion herein "we are without authority to examine into the sufficiency of the evidence to establish adequate reasons for the discharge of an employee," we have not only the authority but the constitutional duty when such question is raised (as it was on rehearing) to determine whether the assigned reasons for disciplining a *429 classified employee, accepting the Civil Service Commission's determinations of fact, do indeed (as required by our Constitution, Article XIV, Section 15(N) (1), see above) constitute adequate cause for any disciplinary action. We, therefore, must hold that the Commission incorrectly concluded as a matter of law, after having made the above factual findings, that the appellant had not borne her burden of proving that the appointing authority had acted arbitrarily and without adequate reason in subjecting her to disciplinary action.
Viewed in the light of such positive findings of unblemished service and of competency and efficiency beyond the call of duty in the performance of her duties, the Commission's findings that the appellant "did not adapt herself to the proposed change in the accounting system at the Airport" and that "In the course of these difficulties (over installation of a new accounting system) appellant's emotional conduct did have effect on her ability to work with others" amounts simply to a factual conclusion that the appellant disagreed with and protested against the change in accounting methods, as a result of which she did have disagreements with other employees, but that she nevertheless performed her duties with unimpaired efficiency and (in the complete absence of any contrary finding by the Commission) without impairing the efficiency of the operations of her governmental employer.
The Commission's findings with reference to the specific charges assigned for the appellant's discharge should be noted.
The first charge contained in the written notice stated:
"Lack of adaptabilitythe New Orleans Aviation Board was compelled to employ another accountant to effect the transition from one fiscal system to a new fiscal system being adopted."
The only specific charge made under this count was that appellant's governmental employer was compelled to employ another accountant to effect the transition in fiscal systems, impliedly because of petitioner's lack of adaptability. The Commission did not, however, after the full hearing find that the Aviation Board was compelled by appellant's lack of adaptability to hire such additional accountant (McGee).
The Commission, therefore, must be regarded as having held factually that such specific charge was not proved.
It is true that the Commission did find that McGee was "directed by the City to act in a supervisory capacity at the Airport for the transition from the old accountancy method to a new auditing system", but such finding is devoid of the slightest implication that the assignment of such additional accounting help resulted from any intransigency of appellant rather than the complexity of the operation. To the contrary, the ruling of the Commission is replete with findings as to the great and unusual burden of work placed upon this conscientious civil servant whose record the Commission found to be untarnished: "This turn-over [initiated in June, 1955] immediately placed great additional duties upon the appellant. Appellant worked on many evenings after hours both at the airport and at home, as well as on week-ends"; after the subsequent death and retirement of the two airport officials above the appellant in August 1955, "The ensuing months found the appellant continuing her top-heavy schedule in her line of duty for the benefit of the Airport, during which she devoted many hours beyond the call of duty. * * * [T]hrough the remainder of the year, appellant was depended upon heavily for supervisory operations as well as attending to her own work * *"; "There is no doubt that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty."
While thus it is true the Commission may have been forced to retain another accountant, that circumstance unrelated *430 to any deficiency on the part of appellant does not subject her to disciplinary action. A governmental agency may not assign an impossible burden of work upon an employee and then complain that the employee does not fully complete same.
Similarly, with regard to the general charge of "lack of adaptability",[1] it is significant that the Commission equated "adaptability" to mental and oral agreement with the change of policy. Having found that petitioner performed her duties with ability and devotion and without blemish up to the date of her discharge, the Commission nevertheless discussed the basis of the charge of "lack of adaptability" in these terms: "In the course of the transition to the accounting system required by the new City Charter, appellant had difficulty adjusting herself to the change, and she expressed herself to the effect that the transition could not be accomplished"; "the appellant assumed an uncompromising attitude toward the new accounting methods * * * and declared that the transition could not be accomplished"; the appellant was "not in sympathy with the new system and felt that the old system should be retained * * * and felt that it would be impossible, or almost impossible, to install the new system".
Accepting the facts found by it, the Commission's incorrect legal conclusion that such facts were a basis for a charge of "lack of adaptability" proceed from the following incorrect conclusion of law: "Appellant was devoid of any right to resist or even to question the propriety of the new accounting methods prescribed in the City charter." (Italics ours.)
Conceding of course that a public employee may not resist a policy of a governmental agency to the point of impairing the efficiency thereof and that a public employee may not carry complaints concerning such procedures of his superior to the point of active sabotage thereof or of actual disobedience thereto, we cannot hold that in this democracy a public employee forfeits the right to question procedures recommended by an immediate or an ultimate superior. The public employee is not the servant of the superiors, but (like the superiors themselves) of the people; and not only is not inhibited from making suggestions to improve the public service (even though these may be critical of procedures recommended by governmental superiors), but is under a moral duty to do so. The appellant here was discharged by the appointing authority not because she was not conscientious enough, but because she was too conscientious.
Even conceding that the appellant should have known that the change in accounting procedures was statutorily required and was not a matter of administrative decision should she convince her superiors, we are aware of no requirement that a public employee must under penalty otherwise of disciplinary action agree in mind or in tongue with any governmental enactment relating to accounting methods,[2] nor that he must regard such statute as (like all other governmental regulations in a democracy) other than subject to informed criticism and to change as provided by constitutional procedures.
The second charge specified in the written notice discharging appellant stated:

"Inability to work with others It was repeatedly demonstrated that you experienced serious difficulty in harmoniously working with contemporaries, *431 internally within the Airport Administration and externally with other agencies."

The substance of this charge is set forth by the Commission's factual conclusion of the following conduct: "In the course of the conflicting views which developed between appellant and the City authorities, appellant developed an emotional situation which contributed at least in part, to the differences between her, her superiors and her fellow employees." This was based upon such factual findings as: "During the course of the difficulties in question, it is also clear that ill feeling developed between appellant and other employees"; "several women employees had become dissatisfied with working conditions brought on by the appellant's behaviour"; "Appellant admitted that there was tension throughout the office and further stated that she found cooperation with the City Hall to be impossible"; "appellant and Mc-Gee did not get along from the start * * * appellant, while recognizing that McGee was placed above her, felt that Mc-Gee was incompetent to handle the tasks assigned to him."
The mere fact that a civil servant has disagreements with her co-employees or superiors or that ill feeling develops between her and them or that she is unpleasant to work with or that she feels her superiors are incompetent (so long as she is outwardly respectful) does not subject her to disciplinary action, absent a showing that such personality defects produce results found to be prejudicial to the efficiency of the public service. While a private employer on the basis of such characteristics might and probably would discharge an employee, the private employer's discretion and even whim in that regard is not restricted by any constitutional inhibition upon disciplining his employees, such as are governmental agencies subject to civil service.
Having concluded as a matter of law from the facts found by the Civil Service Commission that there was no legal cause for which appellant could constitutionally be subjected to disciplinary action, the ruling of the Civil Service Commission for the City of New Orleans is reversed and set aside. It is ordered that appellant, Mrs. Fannie W. Brickman, be restored to her former position with the New Orleans Aviation Board.
PONDER, Justice (concurring).
In the original opinion handed down in this case we did not consider the sufficiency of the charges made by the appointing authority. On rehearing it has been strenuously urged that the charges were not sufficient to inform the employee of the acts complained of requiring disciplinary action. The written charges preferred by the appointing authority are in effect mere conclusions without stating the facts upon which they are based. I do not think that the charges herein comply with our Constitution and therefore I concur in the decree.
McCALEB, Justice (dissenting).
The majority holding that the factual findings of the Civil Service Commission did not constitute legal cause for disciplinary action on the part of the appointing authority is not founded on a sound premise. First of all, it is apparent to me that the majority has, in reaching its conclusion, completely ignored the well-established rule of law applicable on review of findings of an administrative board, i. e., that its action will not be disturbed unless it appears to have been arbitrary and capricious. As pertains to civil service cases, it has been many times said that, if there is any evidence at all from which a conclusion could be drawn that the employee's conduct is prejudicial to the service, the ruling will not be disturbed. Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24; Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393; Marchese v. New Orleans Police Department, *432 226 La. 982, 77 So.2d 742; Jais v. Department of Finance, 228 La. 399, 82 So.2d 689; Barclay v. Department of Commerce and Industry, 228 La. 779, 84 So.2d 188 and Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73.
The facts of the case are not seriously disputed. As found by the Commission and in our original opinion, they portray that plaintiff, a faithful and efficient female employee for many years, developed emotional difficulties in the performance of a duty imposed by law on her immediate employer, the Aviation Board, involving the transition of an accounting system to which she had been accustomed and which she liked, to a new system which she did not think feasible and against which she developed an aversion and uncompromising attitude. The passage of time did not improve the situation. Her ability to perform her duties became increasingly difficult. She was unable to adapt herself to the task at hand and the disturbance affected her ability to work harmoniously with others.
After hearing some 25 witnesses who testified on the appeal, the Commission, in a 10-page written opinion, most of which is quoted by the majority, concluded that the assigned causes had been established. The painstaking findings of the Commission, as discussed by the majority opinion, contain a ready recognition of appellant's previous good service but they also show, beyond any doubt, that her attitude respecting the change in the system had produced such serious mental emotion and strain that disciplinary action was in order.
In this connection, it is to be noted that the majority, in its quotations from the Commission's findings, has omitted three paragraphs therefrom which deal with evidence that (in my opinion) evidently had bearing upon the conclusion of the Commission. I herewith reproduce these omitted paragraphs. The Commission states:
"Edward D. Rapier, the Chairman of the Aviation Board, testified that the Board recognized the appellant's ability in her position. However, when he learned of the difficulties at the Airport office he conferred with the appellant and Mr. Clarence Bonnett, with whom she had been working in an attempt to straighten out the financial records. Serving as Chairman, without remuneration, Mr. Rapier was not at the airport at all times in question. However, discussions were had in the Board's meetings for about one year concerning the appellant's situation. Mr. Rapier testified that, in view of appellant's record, he made every effort to reconcile the situation. Rapier finally concluded that the difficulty could not be worked out and accordingly it was decided by the Board that the appellant would be dismissed and the Assistant Aviation Director's letter of July 21, 1956 followed. This conclusion was not made hastily but only after many months of serious reflection and various efforts to rectify the situation."
Following the quotation from the Commission's findings respecting the assumption by appellant of an uncompromising attitude toward the new accounting methods (see the first paragraph of page 7 of the majority opinion) the Commission declares:
"Finally, on July 13, 1956, the appellant addressed a note in her own handwriting to Mr. Johnson, which reads as follows:
 "Fri July 13, 1956.
"Mr. Johnson
"Regret extremely having to be out Wed. aft. & Thursday. There was more than 1 reason for bringing on the headache.
"In order not to hold up my work too long, I will only take 2 weeks now, and some other time the balance, at opportune time.
"In the light of 1 of the reasonsI earnestly request being advised if this situation is to continue.

*433 "If it isI can't endure it any longer & will guide myself accordingly.
"I have my ticket, travellers cks and room reservation, and I would like to go on trip to Fla.
 "(signed) Fannie W. Brickman"
"Assistant Aviation Director Cruze, to whom this note was relayed, testified that he interpreted this note to mean that, if those in authority above Mrs. Brickman, and particularly Mr. McGee, were not removed, she would resign. Stated in another manner, Cruze considered this note an ultimatum. This interpretation was not questioned or denied by appellant."
Later on in its opinion the Commission stated:
"Since the appellant's discharge, the installation of the new accounting system has been completed and has been working satisfactorily according to the testimony of Assistant Comptroller Sutherland. Purchasing for the Airport is now done by the City purchasing division, and receipts and disbursements are handled through the City Treasurer's department, with resulting decreased fiscal control by the Aviation Board and a decrease of the accounting load in the operation of the Airport on the part of the Airport staff."
To say that an employee has the right to disagree with his employer's policies and to criticize such policies may or may not be justifiable, depending upon the facts of the particular case. But to conclude, as the majority has in this case, that a person in classified service is immune from disciplinary action merely because she has been a faithful worker and could, under normal conditions, perform the tasks assigned to herwhen, as shown by the evidence, the employee's adamant attitude extended over a period of months and delayed the change in the accounting system which was required by lawis to cast aside all realities of an employer-employee relationship and substitute, in the name of civil service, a new connotation of the word "cause".
Of course, if under the facts found by the Commission there is no real and substantial relation between the conduct of the employee and the efficient operation of the public service, no "cause" is presented for disciplinary action and, should the Commission under such circumstances sustain the discrimination, a question of law would be presented here on appeal from the Commission's ruling. But, in employing this legal ground as the foundation of its decision, the Court should be mindful that it is not primarily its function to determine whether the cause established as a basis for disciplinary action does or does not impair the efficiency of the service. That question, in my view, is fundamentally within the orbit of the Commission's duties. Therefore, when reviewing the Commission's ruling, we should refrain from substituting our own concepts for those of the Commission and give full application to the rule, above cited herein, that the administrative finding will not be disturbed in the absence of a clear showing that it is arbitrary and capricious.
On the other hand, I am of the opinion that the Civil Service Commission erred in failing to make an independent finding of its own that the penalty of dismissal was meet and proper under the facts and circumstances of the case. While noting that appellant had worked faithfully and efficiently for almost 15 years in the service of the City of New Orleans and that she was discharged within four months of the time she would have become eligible for retirement, the Commission simply took the position that, since the appointing authority had deduced that her inability to adjust herself to the changes in accounting methods constituted cause for her dismissal, it would not disturb his action as it did not appear to be arbitrary and capricious. As authority for this position, the Commission quoted a statement contained in Broussard *434 v. State Industrial School, 231 La. 24, 90 So.2d 73, 77, reading as follows:
"Whether the personal conduct is detrimental and prejudicial to the service is largely within the discretion of the appointing authority under this rule (Civil Service Commission's Rule 12.1) and the commission will not disturb the appointing authority's action in this respect unless it appears to have been arbitrary and capricious and motivated by personal prejudice and/ or political reasons." (Words in parenthesis mine).
The foregoing is an expression of the well-established rule throughout this country that a court, in reviewing discretionary action of an officer, board or commission will not substitute its judgment for that of the officer, board or commission in the absence of a showing of clear abuse of discretion. See 62 C.J.S. Municipal Corporations § 740(1); 10 Am.Jur. "Civil Service", Section 14 and Kaplan "The Law of Civil Service", pp. 239-241.
As applied to a court of review of administrative action, there cannot be any doubt as to the soundness of the quoted statement. But, unfortunately, according to the literal import of the language used, the pronouncement appears to apply broadly to reviews by civil service commissions as well as the courts and these commissions have thus considered it, stating in this and other cases that they will not disturb the action of the appointing authority in disciplinary cases unless they find it to be arbitrary and capricious. While it must be conceded that the statement is open to this construction, I do not think it was ever the intention of the Court to convey to the civil service commissions that they were not required to decide for themselves on all appeals, in cases involving disciplinary action, that the action taken by the appointing authority was justified in fact and in law.
By Section 15(O) (1) of Article 14 of the Constitution it is the function of the civil service commissions, inter alia, "* * * to hear and decide all appeals and the legality of all removal and disciplinary cases". Accordingly, in making a determination of any case brought before them, it is their duty to decide from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if this question is determined affirmatively, it must then be resolved whether the dereliction is such as to justify the punishment imposed. For, if the penalty is not commensurate with the asserted cause for the disciplinary action, then, unquestionably, there has been discrimination against the employee in violation of the law. The Commission abdicates its function of review unless it makes an independent finding on these questions, forasmuch as the issue on appeal in employee disciplinary cases is not confined to the question of whether the action of the appointing authority is arbitrary and capricious but, rather, whether the disciplinary action was founded on cause which necessarily includes inquiry into the question of whether the penalty inflicted is warranted by the facts.[1]
I am aware that there is considerable authority throughout this country to the effect that, unless the civil service statute authorizes the reviewing agency to modify the punishment directed by the appointing *435 authority, the reviewing agency may not change the penalty or exact any conditions in affirming the determination of the appointing authority. See Kaplan, "The Law of Civil Service", p. 238 and the cases cited in support of the text. However, an examination of the statute applicable to the City Civil Service Commission, particularly R.S. 33:2424, which has been continued in effect by Section 15(P) (6) of Article 14 of the Constitution (see Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393), discloses, in my opinion, that the Commission is not only vested with the power to alter the penalty imposed by the appointing authority but that it is its duty to do so when it believes that the punishment is too harsh or otherwise not commensurate with the conduct upon which the disciplinary action is based. R.S. 33:2424 declares, in substance, that the dismissed employee may "demand a hearing to determine the reasonableness of the action, * * *"; that, after hearing the Commission shall approve or disapprove the action and that, in case of disapproval, it "shall reinstate the employee under the conditions which it deems proper, and may order full pay for lost time." (All italics mine).
Since the Commission in this case did not decide for itself that the action taken by the appointing authority in discharging appellant was justified by the acts which formed the basis of the appointing authority's action, I would remand the case to the Commission for its determination of this question.
HAWTHORNE, Justice (dissenting).
I concur in the reasons given by Justice McCALEB in his dissenting opinion.
FOURNET, Chief Justice (concurring).
I am in accord with the views expressed in the dissenting opinion of Mr. Justice Mc-CALEB views which, as stated in the majority opinion on rehearing, have the approval of the majority of this Court that it is the duty of the various civil service commissions "to decide from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if this question is determined affirmatively, it must then be resolved whether the dereliction is such as to justify the punishment imposed * *;" also, that the Commission in the instant case "erred in failing to make an independent finding of its own that the penalty of dismissal was meet and proper under the facts and circumstances of the case. While noting that appellant had worked faithfully and efficiently for almost 15 years in the service of the City of New Orleans and that she was discharged within four months of the time she would have become eligible for retirement, the Commission simply took the position that, since the appointing authority had deduced that her inability to adjust herself to the changes in accounting methods constituted cause for her dismissal, it would not disturb his action as it did not appear to be arbitrary and capricious * * *." But I cannot agree with Justice McCALEB in his view that the case should be remanded to the Commission for a determination of this question, as proposed in his dissenting opinion. It is my view that in civil matters this Court has the right, in fact the duty, not only to reverse the rulings of the Commission when erroneous but to make corrections needed, as was ordered in the majority opinion. The facts as detailed by the Commission itself clearly show that the dismissal of appellant was arbitrary and capricious.
Under the express provisions of the Louisiana Constitution (Article 14, Section 15), a person who has acquired permanent Civil Service status may not be demoted, dismissed or discriminated against except for cause expressed in writing (Sec. 15(N) (1)); the employee affected may appeal to the appropriate Civil Service Commission, those Commissions being vested with the right to hear and decide such appeals and to determine the legality of all removal *436 and disciplinary cases (Sec. 15(O) (1)), and are also empowered to adopt rules "which shall have the effect of law" fixing the procedure, the time within which appeals must be taken, and all other matters pertaining to appeals (Sec. 15(I) (8)). The requirement that the "cause" be expressed in writing has received a strict construction by this Court, and absence of proper notification is fatal to the legality of the employer's action. Young v. Charity Hospital of La. at New Orleans, 226 La. 708, 77 So.2d 13; Day v. Department of Institutions, 228 La. 105, 81 So.2d 826; Bennett v. Louisiana Wild Life and Fisheries Commission, 234 La. 678, 101 So.2d 199; King v. Department of Public Safety, 234 La. 409, 100 So.2d 217; and Mayerhafer v. Department of Police of City of New Orleans, 235 La. 437, 104 So.2d 163.
The Constitution also declares that the burden of proof on appeal, as to the facts, is on the employee (Art. 14, Sec. 15(N) (1) (a)); but in order to avoid placing an impossible burden on him or her, the employee must of necessity have something explicit to refute, and lacking a statement of fact which is subject to disproof in a legally accepted sense, the "cause" stated is insufficient to meet legal requirements. Moreover, while an appeal to this Court from the decision of the appropriate Civil Service Commission is granted on questions of law alone (Sec. 15(O) (1)), there is the further ruleadapted from a principle of law obtaining in criminal cases and implicit in several of our recent civil service opinions that where there is claimed to be a complete lack of evidence to support proof of a "cause" assigned for the disciplinary action taken in a case, there arises a question of law which this Court may decide after examination of the record. See Jais v. Department of Finance, 228 La. 399, 82 So.2d 689, citing Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393, 395, and Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742.
Of the two "causes" assigned for dismissal,[1] the specification under the first was so thoroughly disproved by appellant that it can be said there is no proof in the record to support the assertion (i. e., that the hiring of an accountant to effect the transition was necessitated by appellant's lack of adaptability). The person employed, as revealed by the record, was Chester E. McGee; he began work in the fiscal office at the Airport toward the end of May, 1956, at which time admittedly the correlation with the City's system had been about 90% completed. The purpose of his employment, as a matter of fact, was to replace Mrs. Brickman while she was away on vacation; he himself so stated: "That's the first thing that was mentioned to me. They wanted me to take over the books and perform the bookkeeping services so Mrs. Brickman could take her vacation." The reconciliation of the accounts had to be effected by June 30, 1956, so that not only was appellant's overburdened schedule further complicated by having to familiarize McGee with the system, but she found herself with an unwilling assistant, for McGeewho was not a C.P.A. but had general accounting experiencefreely admitted that "I placed myself above bookkeeping." Possibly because of that attitude, and in any event for some reason, he had to be shown over and over the details of the system, while at the same time he maintained a commanding air and an often overbearing demeanor. Suffice to say that there is no indication whatsoever that McGee was of the slightest assistance in effecting the reconciliation; to the contrary, rather, is *437 the clear showing that he was a source of disharmony and his presence was actually an obstruction to meeting the goal.
With reference to the other cause assigned for dismissal, in my opinion a mere reading of its language shows how well-nigh impossible it would be to convincingly disprove such vague and general charges. At most it is a mere conclusion of the appointing authority, without giving any factual basis therefor. Such a cause for disciplinary action cannot be said, in good conscience, to have sufficiently apprised appellant of exactly what she would be required to disprove in order to meet the burden placed on her on appeal, and I think was clearly ineffective.
For the above reasons, I respectfully concur.
NOTES
[1] We pretermit consideration of whether such charge is constitutionally sufficient, unaccompanied by specifications adequate to inform a civil service employee of what conduct on his part is complained of so that he may prepare his defense.
[2] Cf., Thomas Jefferson's statement in 1779, found at 2 Papers of Thomas Jefferson (Boyd ed. 1950) 546: "* * * the opinions of men are not the object of civil government, nor under its jurisdiction; * * * it is time enough for the rightful purposes of civil government for its officers to interfere when principles break out into overt acts against peace and good order." (Italics ours.)
[1] That this sort of review by commissions and other similar agencies is envisioned by civil service laws is well stated by Mr. Kaplan in his treatise "The Law of Civil Service". He observes, on page 241: "Exclusion of the courts from reviewing such administrative determination places a responsibility on an administrative reviewing agency to do justice to both the removing authority and the employee involved. Review by the court usually limits the court to either confirming or overruling the administrative determination. The personnel agency invariably has much greater scope of authority to modify the extent of disciplinary action (unless the statute confines its determination to an affirmance or reversal). * * *"
[1] "a. Lack of adaptabilityThe New Orleans Aviation Board was compelled to employ another accountant to effect the transition from one fiscal system to a new fiscal system being adopted.

"b. Inability to work with others It was repeatedly demonstrated that you experienced serious difficulty in harmoniously working with contemporaries, internally within the Airport Administration, and externally with other agencies."