On Rehearing.
TATE, Justice.
This is an appeal by Mrs. Fannie W. Brickman from a ruling of the Civil Service Commission, City of New Orleans, affirming her dismissal as Aviation Accountant at Moisant International Airport. In our original opinion, the Civil Service Commission ruling was affirmed upon our finding that some evidence found in the record supported the charges for which appellant was discharged.
Full rehearing was granted, however, particularly to give further consideration to appellant’s contentions (1) that the written notice constitutionally required before disciplinary action can be taken against a classified employee and sacramental to the validity of such proceedings (Article XIV, Section 15(N) (1), Louisiana Constitution; Day v. Department of Institutions, 231 La. 775, 93 So.2d 1; Young v. Charity Hospital of Louisiana, 226 La. 708, 77 So.2d 13), insufficiently apprised appellant of any legal cause for dismissal and therefore was constitutionally defective; and (2) that even assuming that some disciplinary action was warranted under the facts, the penalty of dismissal imposed on the appellant under the circumstances was discriminatory, unjust, and improper.
Since upon our reconsideration of all issues of this appeal, a majority of the Court has come to the conclusion that the factual findings of the Civil Service Commission themselves show that there was no legal cause proved justifying the dismissal of appellant and that therefore she is entitled to reinstatement, we are not required in reaching our opinion to discuss the above contentions.
But, it 'may be added, the majority is in accord with the views expressed by Mr. Justice Mc.Caleb’s dissent herein concerning the second contention advanced in the application for, rehearing: that the Civil Service Commission should and could have reviewed whether the penalty of dismissal imposed upon appellant was just and proper under the facts and commensurate with the asserted cause for the disciplinary action, rather than abdicating such reviewing responsibility because of a sincere and well-intentioned misinterpretation of our holding in Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73. Were it not .that- no legal cause for disciplinary action is found by us to have been *154 proved, the majority agrees that it would have been necessary to remand these proceedings to said Commission for it to make independent finding of its own whether the penalty of dismissal was proper under the facts and circumstances of the case.
In explanation of the conclusion of the majority that the findings of the Civil Service Commission affirmatively show that no legal cause was proved to justify disciplinary action against the appellant, we deem it advisable to fully recapitulate the circumstances reflected by the findings of fact of the Commission.
Appellant’s discharge was communicated to her by a letter of July 21, 1956, from her employee, the New Orleans Aviation Board. Therein, the reasons for termination were set forth as follows:
“a. Lack of adaptability — The New Orleans Aviation Board was compelled to employ another accountant to effect the transition from one fiscal system to a new fiscal system being adopted.
“b. Inability to work with others — It was repeatedly demonstrated that you experienced serious difficulty in harmoniously working with contemporaries, internally within the Airport Administration, and externally with other agencies.”
The following factual summation by the Civil Service Commission contains its entire findings of facts insofar as relevant to the question of whether such factual findmgs support any legal conclusion that' a', legal cause, within the specifications o'f the > written notice of discharge, existed- for disciplinary action against the appellant (the italicization therein is ours) :
“The salient evidence discloses that Mrs. Fannie W. Brickman was employed continuously by the City of New Orleans from January of 1941 up to her discharge, and that her record to the date of discharge is untarnished. * * *
“The tenure at Moisant Airport of Mrs. Brickman, a widow, * * * dates back to the opening of that airport during the year 1946. Appellant assisted Walter Ryan of an outside auditing firm in formulating an accounting system for the Airport operations. Her duties included that of cashier, bookkeeper and accountant, and even extended to the preparation of operating budgets and working papers in connection therewith. Although appellant was not a Certified Public Accountant she had studied accountancy in the evening division of Tulane University for two years.
“During the month of June, 1955 Mr. Langstaif informed the appellant that the Airport would have to install a new auditing system in keeping with the provisions of the new charter for the City of New Orleans. This ‘turn-over’ immediately placed additional duties upon the appellant. Appellant worked on many evenings after hours both at the airport and at *156 home, as well as on weekends. There is not the slightest reflection in the record upon her ability or industry.
“The Assistant Director of the Airport, Mr. Randall B. Fowler, died on August 29, 1955 and shortly thereafter Mr. Langstaff retired, thus removing the two top officials above the appellant. The ensuing months found the appellant continuing her top-heavy schedule in her line of duty for the benefit of the Airport, during which she devoted many hours beyond the call of duty.
“* * * it is fair to observe that from the death of Mr. Fowler in August, 1955 through the remainder of the year, appellant was depended upon heavily for supervisory operations as well as attending to her own work. To assist appellant there were several women employees assigned in that office, none of whom had the experience of the appellant.
“Later on Chester McGee was directed by the City to act in a supervisory capacity at the Airport for the transition from the old accountancy method to a new auditing system, in order to mesh with the provisions of the new City charter. Among the requirements of the new City charter were, that all purchases should clear through the central purchasing department of the City, and that all collections and disbursements should clear through the City Treasurer’s office. The record contains evidence to the effect that the appellant was not in sympathy with the new system and felt that the old system should be retained, for the reason that it has been recognized as proper practice in airports of other cities, and appellant considered the old system to be adequate. There is also evidence that the appellant felt that it would be impossible, or almost impossible, to install the new system.
“In January of 1956, feeling that the pressure on her was too great, appellant informed Mr. J. D. Cruze (who, in the meantime had been appointed Assistant Aviation Director) that she desired to resign. Mr. Cruze discussed the matter with appellant as a result of which she withdrew her resignation, and he informed her that she would be given a 21-day vacation, her first since 1948.
“The evidence is quite clear that the appellant and McGee did not get along from the start, appellant contending that she had sought to indoctrinate McGee but that McGee had refused to take heed. The evidence further shows that McGee was sent to the Airport in a supervisory capacity and that appellant, while recognizing that McGee was placed above her, felt that McGee was incompetent to handle the task assigned to him. McGee made several threats to appellant to report the matter to the Assistant Aviation Director.
“The evidence discloses that several women employees had become dissatisfied *158 with working conditions brought on by the appellant’s behaviour.
“Appellant, on the stand, admitted that there was tension throughout the office and further stated that she found cooperation zvith the City Hall to be impossible. Appellant declared that the strain of the circumstances reacted on her so as to render her emotional at various times. ‡ Í ‡
“There is no doubt that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty. The demands of the various air lines on Moisant International Airport have increased 17% each year for the past few years. The appellant zvas ztnder pressure during that entire tenure. In the light of appellant’s commendable record of her employ with the City, the case is not without its difficult points for this Commission to decide.
“Appellant has undoubtedly been a valuable and respected city employee for many years. The record is clear, however, that appellant assumed an uncompromising attitude toward the new accounting methods called for by the City charter and declared that the transition could not be accomplished. * * *
“It is fundamental that since the Airport is owned and operated by the City of New Orleans, the controlling authority on all administrative matters including accounting methods, is the City charter itself, which is binding on all citizens including city officials. It was incumbent upon appellant to adjust herself to the change. This she failed to do. Appellant was entirely devoid of any right to resist or even question the propriety of the new system required by the City charter.

“During the course of the difficulties in question, it is also clear that ill feeling developed between the appellant and other employees.

“The Commission must therefore conclude that the appellant did not adapt herself to the proposed change in the accounting system at the Airport, and, in fact, she actually declared that the transition could not be accomplished. In the course of these difficulties appellant’s emotional conduct did have effect on her ability to work with others.”
The following summary of the factual conclusions of the Commission is found as its formal “Finding of Facts” (italics ours):
“1. For many years prior to her dismissal on July 26, 1956, appellant had been a competent and faithful employee of the City of New Orleans.
“2. In the course of the transition to the accounting system required by the new City Charter, appellant had difficulty in adjusting herself to the change, and she expressed herself to *160 the effect that the transition could not be accomplished.
“3. In the course of the conflicting views which developed between appellant and the City authorities, appellant developed an emotional situation, which contributed at least in part, to the differences between her, her superiors and her fellow employees.
“4. Under all the circumstances it cannot be said that the appointing authority acted without reason in concluding that appellant lacked adaptability, and demonstrated some inability to work with others.”
Our Constitution provides that a classified employee shall not be subject to disciplinary action “except for cause, expressed in writing by the appointing authority.” Art. XIV, Sec. 15(N) (1), La. Constitution. As we stated in Cottingham v. Department of Revenue, 232 La. 546, 94 So.2d 662, 665, there must be a “real and substantial relation between the assigned caused for the dismissal of appellant (employee) and his qualifications for the position in which he served,” otherwise “the action of the Commission in upholding his removal would, of course, be arbitrary and hence subject to annulment by this court as a matter of law.” An assigned reason for disciplinary action does not of itself provide good cause therefor in the absence of a showing of some relationship between the assigned reason and prejudice to the efficiency of the public service. Dickson v. Department of Highways, 234 La. 1082, 102 So.2d 464.
In applying these principles to review of the present ruling of the Civil Service Commission, preliminarily it must be observed that the Commission, far from finding after a full hearing that the conduct upon which the discharge is founded has a reasonable relationship to an administrative conclusion that the employee’s retention is prejudicial to the efficiency of the service in which employed, expressly and repeatedly negatived such finding. The Commission found that, “her (the appellant’s) record (as a city employee) to the date of discharge is untarnished”; that “There is not the slightest reflection in the record upon her ability or industry”; “that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty”; that “prior to her dismissal on July 26, 1956, appellant had been a competent and faithful employee of the City of New Orleans.”
While as noted in our original opinion herein “we are without authority to examine into the sufficiency of the evidence to establish adequate reasons for the discharge of an employee,” we have not only the authority but the constitutional duty when such question is raised (as it was on rehearing) to determine whether the assigned reasons for disciplining a classified employee, • accepting the Civil *162 Service Commission’s determinations of fact, do indeed (as required by our Constitution, Article XIV, Section 15(N) (1), see above) constitute adequate cause for any disciplinary action. We, therefore, must hold that the Commission incorrectly concluded as a matter of law, after having made the above factual findings, that the appellant had not borne her burden of proving that the appointing authority had acted arbitrarily and without adequate reason in subjecting her to disciplinary action.
Viewed in the light of .such positive findings of unblemished service and of competency and efficiency beyond the call of duty in the performance of her duties, the Commission’s findings that the appellant “did not adapt herself to the proposed change in the accounting system at the Airport” and that “In the course of these difficulties (over installation of a new accounting system) appellant’s emotional conduct did have effect on her ability to work with others” amounts simply to a factual conclusion that the appellant disagreed with and protested against the change in accounting methods, as a result of which she did ha^e disagreements with other employees, but that she nevertheless performed her duties with unimpaired efficiency and (in the complete absence of any contrary finding by the Commission) without impairing the efficiency of the operations of her governmental employer.
The Commission’s findings with reference to the specific charges assigned for the appellant’s discharge should be noted.
The first charge contained in the written notice stated:
"Lack of adaptability — the New Orleans Aviation Board was compelled to employ another accountant to effect the transition from one fiscal system to a new fiscal system being adopted.”
The only specific charge made under this count was that appellant’s governmental employer was compelled to employ another accountant to effect the transition in fiscal systems, impliedly because of petitioner’s lack of adaptability. The Commission did not, however, after the full hearing find that the Aviation Board was compelled by appellant’s lack of adaptability to hire such additional accountant (McGee).
The Commission, therefore, must be regarded as 'having held factually that such specific charge was not proved.
It is true that the Commission did find that McGee was “directed by the City to act in a supervisory capacity at the Airport for the transition from the old accountancy method to a new auditing system”, but such finding is devoid of the slightest implication that the assignment of such additional accounting help resulted from any intransigency of appellant rather than the complexity of the operation. To the *164 contrary, the ruling of the Commission is replete with findings as to the great and unusual burden of work placed upon this conscientious civil servant whose record the Commission found to be untarnished: “This turn-over [initiated in June, 1955] immediately placed great additional duties rtpon the appellant. Appellant worked on many evenings after hours both at the airport and at home, as well as on week-ends”; after the subsequent death and retirement of the two airport officials above the appellant in August 1955, “The ensuing months found the appellant continuing her top-heavy schedule in her line of duty for the benefit of the Airport, during which she devoted many hours beyond the call of duty. * * * [T]hrough the remainder of the year, appellant was depended upon heavily for supervisory operations as well as attending to her own work * “There is no doubt that the demands made upon the appellant, and her attempt to comply, required time and effort far beyond the call of duty.”
While thus it is true the Commission may have been forced to retain another accountant, that circumstance unrelated to any deficiency on the part of appellant does not subject her to disciplinary action. A governmental agency may not assign an impossible burden of work upon an employee and then complain that the employee does not fully complete same.
Similarly, with regard to the general charge of “lack of adaptability”,[1] it is significant that the Commission equated “adaptability” to mental and oral agreement with the change of policy. Having found that petitioner performed her duties with ability and devotion and without blemish up to the date of her discharge, the Commission nevertheless discussed the basis of the charge of “lack of adaptability” in these terms: “In the course of the transition to the accounting system required by the new City Charter, appellant had difficulty adjusting herself to the change, and she expressed herself to the effect that the transition could not be accomplished”; “the appellant assumed an uncompromising attitude toward the new accounting methods * * * and declared that the transition
could not be accomplished”; the appellant was “not in sympathy with the new system and felt that the old system should be retained * * * and felt that it would be impossible, or almost impossible, to install the new system”.
Accepting the facts found by it, the Commission’s incorrect legal conclusion that such facts were a basis for a charge of “lack of adaptability” proceed from the *166 following incorrect conclusion of law: “Appellant was devoid of any right to resist or even to question the propriety of the new accounting methods prescribed in the City charter.” (Italics ours.)
Conceding of course that a public employee may not resist a policy of a governmental agency to the point of impairing the efficiency thereof and that a public employee may not carry complaints concerning such procedures of his superior to the point of active sabotage thereof or of actual disobedience thereto, we cannot hold that in this democracy a public employee forfeits the right to question procedures recommended by an immediate or an ultimate superior. The public employee is not the servant of the superiors, but (like the superiors themselves) of the people; and not only is not inhibited from making suggestions to improve the public service (even though these may be critical of procedures recommended by governmental superiors), but is under a moral duty to do so. The appellant here was discharged by the appointing authority not because she was not conscientious enough, but because she was too conscientious.
Even conceding that the appellant should have known that the change in accounting procedures was statutorily required and was not. a matter of administrative decision should she convince her superiors, we are aware of no requirement that a public employee must under penalty otherwise of disciplinary action agree in mind or in tongue with any governmental enactment relating to accounting methods,[2] nor that he must regard such statute as (like all other governmental regulations in a' democracy) other than subject to informed criticism and to change as provided by constitutional procedures.
The second charge specified in the written notice discharging appellant stated:
"Inability to work with others— It was repeatedly demonstrated that you experienced serious difficulty in harmoniously working with contemporaries, internally within the Airport Administration and externally with other agencies
The substance of this charge is set forth by the Commission’s factual conclusion of the following conduct: “In the course of the conflicting views which developed between appellant and the City authorities, appellant developed an emotional situation which contributed at least in part, to the differences between her, her superiors and *168 her fellow employees.” • This was based upon such factual findings as: “During the course of the difficulties in question, it is also clear that ill feeling developed between appellant and other employees”; “several women employees had become dissatisfied with working conditions brought on by the appellant’s behaviour”; “Appellant admitted that there was tension throughout the office and further stated that she found cooperation with the City Hall to be impossible”; “appellant and McGee did not get along from the start * * * appellant, while recognizing that McGee was placed above her, felt that McGee was incompetent to handle the tasks assigned to him.”
The mere fact that a civil servant has disagreements with her co-employees or superiors or that ill feeling develops between her and them or that she is unpleasant to work with or that she feels her superiors are incompetent (so long as she is outwardly respectful) does not subject her to disciplinary action, absent a showing that such personality defects produce results found to be prejudicial to the efficiency of the public service. While a private employer on the basis of such characteristics might and probably would discharge an employee, the private employer’s discretion and even whim in that regard is not' restricted by any constitutional inhibition upon disciplining his employees, such as are governmental agencies subject to civil service.
Having concluded as a matter of law from the facts found by the Civil Service Commission .that there was no legal cause for which appellant could constitutionally be subjected to disciplinary action, the ruling of the Civil Service Commission for the City of New Orleans is reversed and set aside. It is ordered that appellant, Mrs. Fannie W. Brickman, be restored to her former position with the New Orleans Aviation Board.

. We pretermit consideration of whether such charge is constitutionally sufficient, unaccompanied by specifications adequate to inform a civil servce employee of what conduct on his part is complained of so that he may prepare his defense.

. Cf., Thomas Jefferson’s statement in 1779, found at 2 Papers of Thomas Jefferson (Boyd ed. 1950) 546: “* * * the opinions of men are not the object of civil government, nor under its jurisdiction; * * * it is time enough for the rightful purposes of civil government for its officers to interfere when principles break out into overt acts against peace and good order.” (Italics ours.)