100 So.2d 217

Alva A. KING

v.

DEPARTMENT OF PUBLIC SAFETY of
The State of Louisiana.

No. 43698.

Feb. 10, 1958.

Cadwallader & Perkins, Baton Rouge, for appellant.

N. Cleburn Dalton, Baton Rouge, for appellee.

McCALEB, Justice.

Alva A. King had been an employee of the Driver's License Division within the Department of Public Safety since 1948. In June of 1955, he became head of the Driver's License Division with the title of "Driver's License Administrator". This is a classified position with permanent civil service status and pays a monthly salary of $550.

On March 1, 1957 Forrest C. Pendleton, Director of the Department of Public Safety, sent King a letter dismissing him from the service and assigning eight reasons for the action. King appealed to the Civil Service Commission, denying the verity of the specifications contained in the letter of dismissal and alleging that he had been discriminated against and subjected to a separation from the service because of a personal dislike of him by the Director and for political reasons. He specially pleaded that, when Mr. Pendleton took office shortly after the 1956 change in the State administration, he called appellant and attempted, unsuccessfully, to persuade him to agree to a demotion and accept another position, three grades lower, so that he, Pendleton, could fulfill certain political promises; that, thereafter, Pendleton harrassed, bullied, investigated and intimidated him in a studied effort to make working conditions so unpleasant that he would resign or to entrap him into making a mistake that might serve as a basis for dismissal; that, as part of this plan, Pendleton deliberately dealt with his subordinates, by-passing him on matters within the scope of outlined duties of his position, constantly criticizing and keeping pressure on him in an effort to break his morale and spirit and discredit him in the eyes of his subordinates; that Mr. Pendleton removed selection of new personnel in the Driver's License Division from his hands because appellant abided by civil service rules and regulations and would not assist and cooperate in evasions of the spirit and intent of the merit system and that, thereafter, many appointments of new personnel were made as a result of pressure from outside interests and considerations and not on the basis of the qualifications of the appointees.

After a hearing, the Civil Service Commission concluded that King had disproved charges Nos. 2, 3, 5, 6 and also dismissed charge No. 8 as alleging a conclusion rather than a fact. However, by a vote of three to one, it upheld the administrator's action on charges Nos. 1 and 4, from which ruling King has appealed to this Court.

Charge No. 1 sets forth that King disobeyed a specific order of Director Pendleton in having certain filing cabinets in his office repaired after the Director told him not to do so. King testified that the Director authorized him to proceed with the repairs. Mr. Pendleton testified that he told King "Now, if the filing cabinets are in need of repair, lets look at them, but at the present time I am not going to authorize anything * * *". In this statement he is corroborated by two employees of his office and the majority of the Civil Service Commission found as a fact that the preponderance of evidence favored the Director

Charge No. 4 was that appellant's poor supervision over the Cameron Parish office amounted to gross incompetence in that the Cameron office was closed for a two-week period without his knowledge. Appellant admitted that he did not know that the Cameron office, which operated on a part-time basis, had not functioned for a period of two weeks but he attributed his lack of knowledge to the failure of two intermediate supervisors, who had direct control over the activities of the Cameron Parish office, to inform him of the illness of the employee in charge thereof.

The Civil Service Commission found, as a fact, that the only examiner in the Cameron office was frequently ill; that the office had often been closed and that appellant failed to institute a check on this office

but relied completely on his subordinates. This, the majority concluded, constituted complete indifference to the operation of the Cameron office and justified the action taken by Mr. Pendleton.

In this Court, counsel for appellant have assigned nine alleged legal errors committed by the Commission upon which the reversal of its action is sought. We find most of these contentions to be without merit but there is one complaint which we believe to be well taken, requiring a reversal of the decision and a remand of the case for the taking and consideration by the Commission of certain evidence tendered by appellant which the Commission, or rather, a majority of its members, refused to hear or notice.

During the trial of the case, while counsel were attempting, over objections of counsel for the Director of the Department of Public Safety, to elicit testimony from appellant in support of his special charges that his dismissal was founded on political prejudice and not for the causes assigned in the letter of dismissal, the Chairman of the Commission, joined by one of his associates, told appellant's counsel, in substance, that evidence establishing that the dismissal was due to political pressure, rather than the causes actually assigned, would not make any difference and would be unimportant to the case, if the charges assigned by the Director were true. When this statement was made, appellant's coun-

·sel tried to convince the Chairman and the other member of the Commission that their views were erroneous, contending that, if the discharge was, in truth and in fact, based on political considerations rather than the reasons expressed in writing by the appointing authority, it was incumbent upon the Commission to reinstate the employee. But these gentlemen adhered to their pronouncement and, elaborating on their ·views, stated that they would only consider evidence to disprove the verity of the written charges.

That it was error for the Commissioner to refuse to hear and consider evidence tendered to establish appellant's special averments that his dismissal was founded on political considerations, and not the assigned cause, we entertain no doubt.

·The Civil Service Law, Article 14, Section 15 of the Constitution, particularly Section 15(A) (1) and (N) (1), (2) and (6),[1] while providing that no civil service employee shall be discriminated against except for cause, also specifically declares that no such person "shall be discriminated against or subjected to any disciplinary action for political or religious reasons, * * *".[2] Therefore, if an employee is claiming on appeal from an order of dismissal that the assigned cause therefor is not the real cause but that the underlying cause is politics or religion, it seems too plain for extended argument that he has the right to have the Civil Service Commission consider the factual accuracy of the claim.

The reason given by the Commissioners for their refusal to consider such evidence

1. The pertinent part of these paragraphs read:
   Article 14, Section 15(A) (1). "No person * * * having gained civil service status shall be discriminated against or subjected to any disciplinary action except for cause, and no person * * * shall be discriminated against or subjected to any disciplinary action for political or religious reasons, and all such persons shall have the right of appeal from such actions."
   Article 14, Section 15(N) (1). "No person * * * having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority.".
   (2) "No person shall be appointed or promoted to, or demoted, or dismissed from any position in the State or City Classified Service, or in any way favored or discriminated against with respect to employment in the Classified Service because of his political or religious opinions or affiliations."
   (6) "No appointing authority * * * shall directly or indirectly demote, suspend, discharge, or otherwise discipline or threaten to demote, suspend, discharge, or otherwise discipline any person in the Classified Civil Service of the State or any city for the purpose of influencing his vote, support, or other political activity in any election or primary election; and no appointing authority * * * shall use his official authority or influence, by threats, promises, or other means, directly or indirectly, to punish or coerce the political action of any employee in the Classified Service of the State or a City."

2. See also Sections 13.10(a) and (b) and 14.1(a) of the Rules of the Louisiana Civil Service Commission.

is that their only concern on the employee's appeal is whether he is able to disprove the expressed charges to its satisfaction, the burden being imposed on him by law (Article 14, Section 15 (N) (1) (a) of the Constitution). Accordingly, say the Commissioners, if the employee is unable to disprove the assigned causes, " * * * it doesn't make any difference whether the true reason for the dismissal was politics or religion."

■ The defect in this reasoning is twofold. First, the question whether the assigned charges are true is purely one of fact. Their verity or falsity must be judged by all of the evidence pertinent to the inquiry and the decision of the Commission necessarily depends on its belief or disbelief of the testimony given by the witnesses. Consequently, any evidence tending to show that the action of the appointing authority was founded on impure motives, political considerations or religious prejudices is clearly admissible and should be given consideration by the Commission for, obviously, such evidence has direct bearing on the genuineness of the assigned charges and also may well affect the weight to be given to the Director's testimony and that of his supporting witnesses. The refusal to hear and consider appellant's claims of political pressure effectually denied him a fair and impartial trial.[3]

■ In addition, we think it appropriate to deduce that, even though the verity of the assigned cause for dismissal has not been fully disproved by the aggrieved employee, if the evidence preponderately shows that the appointing authority would not have taken the disciplinary action except for political or religious reasons or prejudices, it would be proper and, in keeping with the Commission's functions and duties, for it to reverse the dismissal or other disciplinary action, provided it felt that the assigned cause was not of such a serious nature as to endanger the efficiency of the service.

Rule 12.1 of the Civil Service Commission declares:

"When the conduct or performance of an employee has been such that his removal, suspension, demotion, reduction in pay, reassignment or reprimand will promote the efficiency of the service, it shall be the duty of the appointing authority to take such action consistent with these rules as he may deem appropriate."

■ It is seen by this provision that exercise of the duty imposed on the appointing authority to remove or to take disciplinary action becomes extant only when the conduct or performance of the employee is such that it is detrimental to the efficiency

3. In our discussion of the duty of the Commission to hear and consider the evidence proffered by appellant under his pleadings, we, of course, do not suggest, nor are we to be understood as indicating, that these claims have merit.

of the service. Hence, if it is shown that the action taken by the appointing authority was founded on an unexpressed illegal cause, i. e., politics or religion, and was not predicated on the assigned cause, but the employee is unable to satisfactorily disprove the verity of the assigned cause, it would appear that it is then incumbent on the Commission to determine whether the expressed dereliction is so detrimental to the efficiency of the service that the action of the appointing authority will be allowed to stand.

The decision appealed from is reversed and the case is remanded to the Civil Service Commission for another hearing consistent with the views herein expressed.

100 So.2d 221