148 So.2d 92 (1962)
Haven P. BONNETTE and Roy Ducote
v.
LOUISIANA STATE PENITENTIARY, DEPARTMENT OF INSTITUTIONS of the State of Louisiana.
No. 5658.
Court of Appeal of Louisiana, First Circuit.
November 9, 1962.
Rehearing Denied December 14, 1962.
*93 Eugene N. Scallan, Marksville, for appellant.
Teddy W. Airhart, Asst. Atty. Gen., Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
These consolidated appeals are from the rulings of the Civil Service Commission dismissing the appeals of employee-appellants, Haven P. Bonnette and Roy Ducote, from the action of their employer-appellee discharging said appellants from positions as Correctional Officers I with the Louisiana State Penitentiary.
Appellants, both employed as guards at Louisiana State Penitentiary, Angola, Louisiana, were terminated from their said positions by identical letters from V. G. Walker, Warden, dated August 17, 1961, assigning the following reasons for their dismissal:
"The specific reason for this action is:
"1. You were reported by Mr. A. D. Wells, Correctional Officer III, for gross negligence of duty. That is, that you were using an alarm clock to wake you in time to make your watch calls.
"2. You also admitted in the presence of Mr. John Butler, Chief Security Officer and myself this date that you used the alarm clock to awaken you in time to make your watch calls."
Based on these charges, after hearing, the Commission made the following findings of fact:

"FINDINGS OF FACT
"Each appellant was required to be constantly alert to protect the security of the penitentiary, and was also required to call in to a central office every thirty minutes from his post of duty on *94 a tower outside the enclosure in the penitentiary at Angola. Both appellants had been advised that they had missed some call-ins during the month of July, 1961. Accordingly, each appellant brought with him to work on subsequent occasions an alarm clock. Each appellant was on the 11:00 p. m. to 7:00 a. m. shift, and each admitted that he regularly became quite sleepy and on occasions was overcome by sleep. Each stated that the alarm clock was utilized solely for the purpose of reminding him to call in at half-hour intervals.
"The officials of the penitentiary had read to all shifts an order forbidding the use of alarm clocks on duty on several occasions prior to the incidents in question. Additionally, these orders were posted on bulletin boards throughout the penitentiary. Each appellant testified that he had never seen nor heard the orders in question, despite the fact that the orders were noted and posted during both the years 1959 and 1960."
In both brief and oral argument before this court Appellee has raised a procedural question which we feel should be disposed of prior to consideration of the instant appeal on its merits.
Appellants, (both of whom were unrepresented by counsel and prosecuted their appeals in proper person before the Civil Service Commission, hereinafter sometimes referred to simply as "The Commission"), on September 5, 1961, filed with the Commission a joint notice of appeal from the action of their appointing authority ordering appellants' dismissal. In substance appellants' notices of appeal state (1) that possession of alarm clocks was not known by them to constitute a violation of any known or existing rule of the penitentiary; (2) their alleged admissions of dereliction of duty were misrepresented, and (3) discrimination on the part of their employer. Subsequently, on September 25, 1961, appellee, the Department of Institutions (sometimes hereinafter referred to simply as "the Department"), through its Personnel Officer, filed a motion for summary dismissal of these appeals on the ground that under Rule 13.11 of the Commission the employee must state in the written notice of appeal the specific relief sought. Appellee's said motion for dismissal is predicated upon the Commission's Rule 13.14(c) which it is contended makes non-compliance with Rule 13.11 ground for dismissal of an appeal. The pertinent rules provide as follows:
"13.11 Request for Appeal
"An appeal shall be applied for by a written notice giving a clear and concise statement of the action complained against, with the date it occurred or that appellant learned thereof, the basis of the appeal, and the relief sought. It must be signed by the appellant or his Counsel and must give the full name and post office address of the appellant and of his Counsel, if any."
"13.14 Summary Dismissal of Appeal.
"Within ten (10) days after the docketing of an appeal a written request for its summary dismissal may be filed by the authority or person against whose action the appeal has been taken, on any of the following grounds, provided no controverted fact is involved in the question:
* * * * * *
"(c) That the appeal has not been made in the manner prescribed, or within the time fixed, by these Rules."
After hearing these appeals on their merits and finding that the appointing authority was justified in dismissing appellants, the Commission included in its opinion the following recitation: "Furthermore, the letter of appeal does not comply with our rules. Accordingly, the appeals are dismissed." Having predicated dismissal of these appeals on the alleged procedural defect urged and relied upon by the appointing authority, appellee's motion to dismiss must, perforce, be disposed of prior to any consideration of these appeals on their merits.
*95 The rules which form the basis of appellee's motion to dismiss have apparently never before been interpreted by the Courts. Consequently, the issue presented comes before us as a matter of first impression. Interpretation of the Commission's rules is a matter of law subject to consideration by the Courts on appeal from rulings of the Commission. Louisiana Constitution Article XIV, Section 15(O) (1), LSA; Hays v. Wild Life and Fisheries Commission, La.App., 136 So.2d 559.
Our consideration of the rule in question leads to the conclusion that its obvious purpose and intent is to permit objection to certain irregularities and informalities of the notice of appeal prior to hearing thereon. Our appreciation of the hereinabove cited portion of Rule 13.14 providing for summary motion to dismiss an appeal on the ground that it was not filed in the manner or within the time prescribed by the Commission's rules, is that such motion must be filed within the ten day delay of docketing prescribed therein otherwise the objection is deemed to have been waived. We note further that Rule 13.11 does not itself provide the penalty of dismissal for failure to comply with its terms. The rules, construed together, lead to the inescapable conclusion that failure of the appellant to comply with Rule 13.11 renders his appeal vulnerable to a motion to dismiss under Rule 13.14 but that dismissal must be moved for by the appointing authority within the time prescribed in Rule 13.14. Appellee herein having failed to timely move for dismissal of the instant appeals is deemed to have waived the objections on which said motion to dismiss is predicated. Accordingly, the ruling of the Commission sustaining appellee's motion to dismiss these appeals is hereby reversed, annulled and set aside and appellee's said motion to dismiss denied and rejected.
Learned counsel for appellants contends the Notices of Dismissal issued herein do not accord with certain provisions of our state constitution and rules of the commission. More precisely, esteemed counsel refers to Article XIV, Section 15(N) (1) of the Constitution of the State of Louisiana, 1921, which reads as follows:
"(N) (1) No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority. (a) The burden of proof on appeal, as to the facts, shall be on the employee."
and to Rule 12.3 of the Commission which sets forth the following requirements regarding adequacy of notice of dismissal.
"Procedure in Adverse Actions for Cause, except Suspensions.
"In every case of removal, demotion or reduction in pay for cause of a permanent employee the appointing authority or his authorized agent shall furnish to the employee at the time such action is taken, or prior thereto, a statement in writing giving detailed reasons for such action. The appointing authority shall furnish the Director a copy of such statement within 15 calendar days of the date the employee is notified."
It is significant to note that whereas the foregoing constitutional provisions and rule of the Commission clearly require that detailed reasons for disciplinary action be stated in the written notice to the employee and further that, in the case at bar, the notices appear inadequate in that they fail to specify the details of time and place, no objection thereto was tendered by appellants in the hearing held before the Commission. The alleged insufficiency and inadequacy of the notice was not made an issue by appellants in their appeal before the Commission.
On appeal to this Court counsel for appellants points out that by failing to specify the dates of the alleged offenses and the date of the order prohibiting the conduct for which appellants were dismissed, the appointing authority circumvented the foregoing constitutional provision and Commission rule thereby placing upon appellants an *96 unfair and impossible burden while, at the same time permitting the appointing authority the opportunity of discovering and establishing cause for dismissal during the course of the hearing.
That proper notification of the cause for dismissal or disciplinary action is essential to the legality of the appointing authority's action in cases of this character is well settled in our jurisprudence. Young v. Charity Hospital of La. at New Orleans, 226 La. 708, 77 So.2d 13; Day v. Department of Institutions, 228 La. 105, 81 So.2d 826; Bennett v. Louisiana Wild Life and Fisheries Commission, 234 La. 678, 101 So. 2d 199; Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422.
Not equally settled, however, is the degree of specificity or explicitness required to be set forth in the notice to comply with the provisions of the applicable constitutional provision and Commission rule. The most recent pronouncement on this issue (which, incidentally, issued from the Supreme Court) is to the effect that the precise conduct of the employee which is found to be detrimental to the efficiency of the state service need not necessarily be stated in the notice in exact terms. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5. In Jais v. Department of Finance, 228 La. 399, 82 So.2d 689, dismissal was predicated on reports of misconduct and the notice failed to specify dates, times and places but apparently insufficiency of notice was not made an issue therein.
Clearly, common sense, reasoning and equity require that the charges against the employee be made specific, certain and definite as to their nature as well as the date, time and place of their occurrence. Otherwise, the employee (upon whom rests the burden of proof on appeal) would obviously be placed at an unconscionable disadvantage. If the charges are not certain, definite and specific it would impose upon the employee the burden of proving that at no time during his employment did he commit the acts charged, suggested or implied by the notice. Such an onus is patently unreasonable; it vitiates and invalidates the right of appeal guaranteed by the Constitution by rendering the appeal so burdensome as to be vain and useless.
We note, however, that in the Leggett case, supra, although the notice of dismissal left much to be desired, it was held sufficient in that it described the alleged incidents of misconduct in adequate detail and gave enough dates to properly apprise the employee of the general charges against him. In Hays v. Louisiana Wild Life and Fisheries Commission, 243 La. 278, 143 So.2d 71, the Supreme Court held that the requirements of the Commission's Rule 12.3 "that detailed reasons be stated for the action taken plainly comprehends a fair and clear statement of the misconduct of the employee including, whenever pertinent, time, dates, places and amounts, if * * * monies are alleged to have been unjustly secured and misappropriated."
In the case at bar, however, we are faced with an instance in which introduction of evidence of specific and detailed acts of misconduct beyond the information contained in the notice was permitted without objection upon the part of the employee. While the discrepancy in question was noted by a member of the Commission during the hearing still no objection was made by either appellant to evidence which went beyond the averments of the notice. In ordinary civil proceedings, under such circumstances, evidence so introduced has the effect of enlarging the pleadings.
It is most significant to point out that Rule 13.19(k) of the Commission provides as follows:
"(k) In all matters not provided for in these Rules, hearings and the taking of testimony shall be conducted according to the accepted practice in civil trials before the District Courts of the State."
The foregoing rule of the Commission has the effect of law pursuant to *97 Article XIV, Section 15(I) (8), Louisiana Constitution 1921. We conclude, therefore, that appellants' failure to timely object to the alleged insufficiency of the notices issued herein cured the inadequacy thereof, if any. Clearly, introduction of the evidence without timely objection enlarged the pleadings and appellants may not at this stage complain of their own dereliction. While it is true that appellants were not represented by counsel but elected to represent themselves in proper person at the hearing before the Commission, they must necessarily accept the consequences of their own inadequacy and inexpertness.
Counsel for appellant strenuously urges that the Commission's findings of fact are not responsive to the charges contained in the notice, therefore, the decision of the Commission should be reversed and set aside. In this regard able counsel argues that whereas appellants were charged with being "reported" for using an alarm clock to wake them in time to make watch calls and with having admitted such use, the Commission found and concluded appellants actually used alarm clocks in the manner reported. The technical nature of said argument is patent and we concede that prior to the decision in Leggett v. Northwestern State College, 242 La. 927, 140 So. 2d 5, it may have possessed some merit. We understand the Leggett case, supra, to hold that the findings of the Commission need not necessarily be responsive to the the charges contained in the notice. In the Legget case, supra, the Supreme Court squarely held that where the cause for dismissal stated in the notice of removal is a report, complaint or publicity attending such report or complaint it becomes the duty of the Commission to ascertain whether the complaints and attendant publicity were predicated on fact. We believe the following language appearing in the Leggett case, supra, pertinent to the issue at hand:
"The written causes for dismissal in the instant case recite in detail five incidents which the appointing authority considered to be of such a nature as to bring Leggett into disrepute and to destroy his usefulness to the college as a police officer. The commission found that some if not all of the incidents alleged as causes for dismissal were true, and concluded under this finding that `the evidence before this Commission establishes beyond doubt the disreputable character of appellant's place of business'.
"If, as the Court of Appeal considered, the specific incidents alleged as causes for dismissal were mere complaints and publicity of complaints, then it became the duty of the commission to ascertain whether these complaints and the attendant publicity were based on facts. This it did, and having ascertained that the complaints had a basis in fact, the commission found that the evidence adduced proved the disreputable character of Legget's place of business. The opinion of the Court of Appeal stated that there was not one scintilla of evidence to establish as true the accusation that Leggett was operating a disorderly house. The commission did not find that the discharged employee was keeping a `disorderly place' as such a place is defined in R.S. 14:104, the keeping of which is made a crime. But the facts found by the commission clearly established the disreputable character of his place of business.
"In cases of this kind appellate or reviewing courts are called upon to answer only questions of law, and the decisions of the Civil Service Commission are final on the facts. Under this principle of law the courts cannot consider the weight or the sufficiency of the evidence, and it is only where there is no evidence that a question of law arises.
"In the instant case we have read the evidence adduced before the commission, and are satisfied that there was *98 evidence to support the commission's finding that Leggett's place of business had a disreputable character."
In substance, the charges contained in the notices sent appellants herein charge appellants with sleeping while on guard duty. In essence, the Commission found that appellants were asleep while on duty and utilized alarm clocks to awaken them in order that their watch calls might be timely made. This conclusion of the Commission is supported by evidence in the record consisting of the testimony of a superior that he found both appellants with alarm clocks in their towers and who further averred that both appellants admitted to him that they had fallen asleep on duty. Moreover, although appellants stoutly maintain they utilized the alarm clocks solely as reminders to make their watch calls at 30 minute intervals during each 8 hour duty shift, they nevertheless both admitted upon examination that they had occasionally fallen asleep while on duty but did not make a habit of such practice. It further appears that prior to securing alarm clocks both appellants had been reprimanded for failure to make watch calls on time.
We find no merit in the contention of appellants that their conduct was not wrongful because the appointing authority failed to establish that it was in contravention of a published or promulgated rule or order of the institution. In this respect, appellants maintain the Commission erred in failing to issue a subpoena to the appointing authority to produce evidence of such a rule or order as requested by appellants.
Under the circumstances obtaining herein failure of the Commission to produce evidence of such a rule or order is immaterial. Falling asleep while on guard duty at a penal institution is such a gross breach of duty as to warrant disciplinary action by the employer notwithstanding the absence of an institutional rule or regulation proscribing such remission. Miller v. State Department of Health, La.App., 135 So.2d 570. In view of the foregoing appellants may not complain of either the Commission's refusal to issue such subpoena or the failure of the appointing authority to comply with the Commission's letter request to produce evidence of an order or directive prohibiting the use of alarm clocks by guards on duty.
Finally, appellants contend the Commission erred in refusing appellants an opportunity to present evidence of alleged discrimination on the part of the appointing authority. In this regard the record reveals that the Commission limited appellants' introduction of evidence to matters contained in the notice of dismissal and declined to permit introduction of evidence to establish that appellants were discharged because of discrimination or other illegal motives and not for the causes assigned in the notices of dismissal.
The Commission's refusal to permit appellants an opportunity to present and introduce evidence of alleged discrimination constitutes reversible error. In King v. Department of Public Safety, 234 La. 409, 100 So.2d 217, the Supreme Court squarely held that notwithstanding proof of the charges contained in the notice of dismissal, refusal of the Commission to permit introduction of evidence by the employee of alleged discrimination is error of sufficient gravity to warrant reversal of the Commission's ruling and the granting of a new hearing. The reason for the rule is so well and clearly stated in the language found in the King case, supra, that we are unable to improve thereon and take the liberty of quoting therefrom at length as follows:
"That it was error for the Commissioner to refuse to hear and consider evidence tendered to establish appellant's special averments that his dismissal was founded on political considerations, and not the assigned cause, we entertain no doubt. The Civil Service Law, Article 14, Section 15 of the Constitution, particularly Section 15(A) *99 (1) and (N) (1), (2) and (6), while providing that no civil service employee shall be discriminated against except for cause, also specifically declares that no such person `shall be discriminated against or subjected to any disciplinary action for political or religious reasons, * * *'. Therefore, if an employee is claiming on appeal from an order of dismissal that the assigned cause therefor is not the real cause but that the underlying cause is politics or religion, it seems too plain for extended argument that he has the right to have the Civil Service Commission consider the factual accuracy of the claim.
"The reason given by the Commissioners for their refusal to consider such evidence is that their only concern on the employee's appeal is whether he is able to disprove the expressed charges to its satisfaction, the burden being imposed on him by law (Article 14, Section 15(N) (1) (a) of the Constitution). Accordingly, say the Commissioners, if the employee is unable to disprove the assigned causes, `* * * it doesn't make any difference whether the true reason for the dismissal was politics or religion.'
"The defect in this reasoning is two-fold. First, the question whether the assigned charges are true is purely one of fact. There verity or falsity must be judged by all of the evidence pertinent to the inquiry and the decision of the Commission necessarily depends on its belief or disbelief of the testimony given by the witnesses. Consequently, any evidence tending to show that the action of the appointing authority was founded on impure motives, political considerations or religious prejudices is clearly admissible and should be given consideration by the Commission for, obviously, such evidence has direct bearing on the genuineness of the assigned charges and also may well affect the weight to be given to the Director's testimony and that of his supporting witnesses. The refusal to hear and consider appellant's claims of political pressure effectually denied him a fair and impartial trial.
"In addition, we think it appropriate to deduce that, even though the verity of the assigned cause for dismissal has not been fully disproved by the aggrieved employee, if the evidence preponderately shows that the appointing authority would not have taken the disciplinary action except for political or religious reasons or prejudices, it would be proper and, in keeping with the Commission's functions and duties, for it to reverse the dismissal or other disciplinary action, provided it felt that the assigned cause was not of such a serious nature as to endanger the efficiency of the service.
"Rule 12.1 of the Civil Service Commission declares:
"`When the conduct or performance of an employee has been such that his removal, suspension, demotion, reduction in pay, reassignment or reprimand will promote the efficiency of the service, it shall be the duty of the appointing authority to take such action consistent with these rules as he may deem appropriate.'
"It is seen by this provision that exercise of the duty imposed on the appointing authority to remove or to take disciplinary action becomes extant only when the conduct or performance of the employee is such that it is detrimental to the efficiency of the service. Hence, if it is shown that the action taken by the appointing authority was founded on an unexpressed illegal cause, i. e., politics or religion, and was not predicated on the assigned cause, but the employee is unable to satisfactorily disprove the verity of the assigned cause, it would appear that it is then incumbent on the Commission to *100 determine whether the expressed dereliction is so detrimental to the efficiency of the service that the action of the appointing authority will be allowed to stand."
We interpret the cited language to mean that irrespective of proof of the misconduct charged, if the employee alleges and proves that the action taken was in fact predicated upon discrimination or illegal or improper motives rather than the charges assigned in the notice, it nevertheless then becomes the duty of the Commission to determine whether the charged misconduct is so detrimental to the efficiency of the service that the action of the appointing authority is justified and will be allowed to stand. In this regard it is significant to note that in the instant cases one of the members of the Commission expressed the view that the action taken by the appointing authority was harsh and excessive.
For the reasons hereinabove expressed the decision of the Commission herein appealed from is reversed and these causes remanded to the Civil Service Commission for a new hearing consistent with the views herein expressed.
Reversed and remanded.