REID, Judge.
In an earlier decision, Bonnette v. Louisiana State Penitentiary, 148 So.2d 92, this Court gave a detailed statement of the case, the charges and the finding of fact by the *22 Civil Service Commission. Pursuant to the decision this case was remanded to the Civil Service Commission solely for the purpose of determining whether the action taken was in fact predicated upon discrimination, illegal or improper motives rather than the charges assigned to the notice.
The Civil Service Commission, after a hearing, held there was no discrimination, and dismissed the appeals of the two employees. From this ruling of the Civil Service Commission, the employees, Bon-nette and Ducote have brought this appeal.
The appellants assigned a number of errors on which they seek to have the judgment of the Civil Service Commission reversed, each of which was discussed and determined by our earlier opinion. In accordance with the requisites of our previous decision we shall consider the following assignment of error only:
“A. In finding that there was no evidence, or that there was no adequate evidence bearing on the question of discrimination, and specifically finding that ‘Toleration of occasional violation in the past is no proof of discrimination’, in that there is virtually no other manner in which discrimination can be shown except by a showing that the violation of other employees with seriously bad records are tolerated when violation of employees such as appellants with virtually perfect records result in the dismissal of the better employees.”
The Civil Service Commission found the following fact:
“Little evidence bearing on the question of discrimination was produced at the second hearing. On this issue we find that appellants failed to bear their burden of proof. Toleration of occasional violation in the past is no proof of discrimination.
“Over the objection of counsel for the Louisiana State Penitentiary, evidence was heard concerning matters on which findings of fact had already been made by on the first hearing and affirmed by the Court of Appeal. This was done only to insure a complete record. There was a definite attempt made to show again that the appellants were not aware of the prohibition against the use of alarm clocks in the watch tower. On this issue, the Commission adheres to its original finding and agrees with the Court of Appeal that as a matter of common sense, that irrespective of rules or knowledge of rules, use of alarm clocks by security-guards is unreasonable and unsuited to, the responsibilities of the job.
“ ‘Falling asleep on guard duty at: a penal institution is such a gross, breach of duty as to warrant disciplinary action by the employer notwithstanding the absence (or ignorance) of an institutional rule prescribing such remission.’ Bonnette v. State Penitentiary, La.App., 148 So. 2d 98.”
The Commission’s finding of fact is-, final and this Court will not reverse it except in extraordinary circumstances, wherein evidence is offered to support its. finding. Melder v. Louisiana State Penitentiary, Department of Institutions, 144 So.2d 226; King v. Department of Public Safety, 236 La. 602, 108 So.2d 524; Cottingham v. Department of Louisiana, 232 La. 546, 94 So.2d 662; Leggett v. Northwestern State College, La.App., 132 So.2d 715.
This Court can reverse the findings of fact by the Commission where it is found, the Commission acted arbitrarily or capriciously. Simmons v. Division of State Employment Security, La.App., 144 So.2d 244.
Two acts of discrimination are-charged by appellant; the first charge alleges the records of Angola show an em- ■ ployee on the 12:00 P.M. to 8:00 A.M. shift missed over 100 calls during one month yet,. was suspended for only two weeks and later ■ transferred to another shift, and second that: *23 the Warden was obliged to awaken a dormitory officer during daylight in order to get inside the dormitory and no disciplinary action resulted from this incident. There is no proof of the first charge of discrimination. As to the second charge the employee, Mr. Villemerette, testified at the hearing in 1959 that on the day of the incident he was sick, had a headache for which he had taken about four aspirin tablets and had laid his head down on a table. Shortly thereafter the Warden had arrived touched him on the shoulder, explaining he wished to enter the dormitory. Mr. Villemerette testified he was not asleep and had never been caught sleeping by anyone else “if you call that sleeping.” Furthermore, his tour of duty for the day expired a short time later and he was on a minimum security post.
Mr. Robert Forbes testified Captain Wells discovered an alarm clock in his, Forbes’, possession for which he was mildly reprimanded. He further testified that Orney Wells, another employee, was discovered sleeping on duty twice in one night. To Mr. Forbes’ knowledge appellants were the only employees fired for such cause.
The control tower, the post to which the two appellants were assigned, was a maximum security post. Each man was armed with a shot gun loaded with buck shot and it was the job of each to guard his post during the entire period he was on duty and not simply at half hour intervals. On the other hand the men who were reprimanded rather than dismissed, were assigned to minimum security posts.
There is some question whether the regulations pertaining to alarm clocks was read to appellants or whether appellants were informed of them. The two employees testified they were not informed; the authorities testified the regulation was read to the men and posted on the bulletin board. Regardless, if we accept appellant’s version these men in their position, armed with weapons must certainly have realized they were on a maximum security post, whether they had read the instructions or not. An employee should anticipate the expectation of using it; common sense should caution him to remain alert and awake every moment he is on duty.
For these reasons we are of the opinion the findings of the Civil Service Commission are correct and should be affirmed.
Affirmed.