299 So.2d 504 (1974)
Joseph Aloysius BIGGIO
v.
DEPARTMENT OF SAFETY AND PERMITS.
No. 5596.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1974.
Rehearing Denied September 10, 1974.
*505 Richard S. McBride, Jr., New Orleans, for plaintiff-appellant.
Michael A. Starks, David Cressy, New Orleans, for defendant-appellee.
Before REDMANN, J., and HUFFT and WICKER, JJ., Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
This is an appeal by Joseph Aloysius Biggio from a ruling of the Civil Service Commission. City of New Orleans, affirming his demotion from Supervisor of the Motor Vehicle Inspection Bureau to that of Motor Vehicle Inspector I.
The appellant was demoted on March 22, 1971, by direction of the Department of Safety and Permits of the City of New Orleans, and the appellant was notified by a communication of the same date setting forth the reasons therefor, viz:
"Mr. Joseph Biggio is hereby demoted from the position of Supervisor of the Motor Vehicle Inspection Bureau to that of Motor Vehicle Inspector I in accordance with Civil Service Rule IX. Mr. Biggio has been both unable and unwilling to perform his duties in a satisfactory manner. He has demonstrated his inability to perform adequately continuously from my assuming the position of Director in May of 1970.
I have on several occasions counseled Mr. Biggio and both orally and in writing reprimanded him and informed him of my dissatisfaction with his service. In spite of these warnings Mr. Biggio has proven to be unable to improve his service.
Mr. Biggio has performed unsatisfactory in the following particulars:
1. Activities prejudice to the service for a period of time prior to 4 January 1971 primarily against Mrs. Myrtle Mitchell, a Clerk (Step-Program) *506 at the Lopez Street Motor Vehicle Inspection Station. On the above date it was determined upon inspection by the Deputy Director that Mrs. Mitchell the only negro female employed at the time with the Motor Vehicle Inspection Bureau was assigned solely the task of marking out the noon school zone times on existing car inspection tags. Though a necessary task it is probably the most menial task and should have been distributed to other employees in a more equitable manner. Two, the location for performing these duties was in the rear of a very small cashier's booth where for all practical purposes she was alone, detached from other employees even to the extent that she was given a bathroom primarily for her use alone. Adequate space was available elsewhere. Mr. Lambert remedied this situation immediately. In my opinion, Mr. Biggio's action in assignment of these duties and inaction in remedying this situation was discriminatory and prejudicial to the service of the city.
2. Not complying with Civil Service regulations regarding the hiring of new employees. Mr. Dorsey Joseph and Mr. Norwood Slater each contacted Civil Service concerning the availability of Motor Vehicle Inspector positions. When their blue forms were checked, Mr. Joseph's form was annotated with Declined on September 14, 1970 and Failure to Reply on November 12, 1970, and Mr. Slater's form had Failure to Reply on both September 14, 1970 and November 12, 1970. When questioned by Mrs. Rainey of Civil Service both men stated they desired employment at those times but were never contacted or informed of any vacancies. At the time it was under Mr. Biggio's responsibility to hire employees for the Inspection Station. Not hiring Mr. Joseph and Mr. Slater, can be assumed to have been arbitrary and discriminatory and therefore prejudicial to the service and an unsatisfactory performance of the duty to timely fill all vacancies of Inspectors. Adequate service to the public at the station depends upon the availability of as large a number of inspectors as possible. This service and the timely hiring of personnel has been continuously stressed. Mr. Joseph and Mr. Slater are now employed.
3. The general administration of the Motor Vehicle Inspection Bureau by Mr. Biggio is unacceptable due to his inability to perform his duties satisfactorily. During the Christmas and New Year's period, Mr. Biggio allowed large numbers of employees to take annual leave. The number of employees on sick leave seemed exceptionally high. For instance, December 30, 1970, 7 on annual leave, 2 on sick leave; January 4, 1971, 4 on annual leave, 2 on sick leave; January 5, 4 on annual leave and 5 on sick leave; January 6, 5 on annual leave, 2 on sick leave; January 7, 5 on annual leave, 2 on sick leave; January 11, 4 on annual leave, 4 on sick leave; January 12, 4 on annual leave, 4 on sick leave. Needless to say, this was a critical period causing much discomfort to citizens and in which much of the success previously obtained was lost.
Inspection procedures are relatively routine, however, requiring as complete a staffing as possible and supervision to insure compliance with standard procedures. Mr. Biggio is unable to adequately or satisfactorily supervise the station and its employees. Violation of these standard procedures have been found by my staff. Complaints from City Officials, Citizens, and station employees have been received frequently. *507 Mr. Biggio has been found absent from the station on a lunch hour at times when his presence was required. On occasions when he is present he was not supervising the inspectors personally as directed during heavy traffic periods. He relies too heavily on subordinates providing little direction or advice. He has delegated too much authority to employees below the supervisory level.
For these reasons and for the reason his overall performance is unsatisfactory I have seen fit to remove him from the position of Supervisor."
After a hearing the Civil Service Commission made the following findings:
"Appellant, Joseph Aloysius Biggio, an employee in the classified service since 1953, was promoted from Vehicle Inspector II, assigned to the City Brake Tag Station, to Motor Vehicle Inspection Supervisor in charge of the operation of the Brake Tag Station. The promotion occurred in December, 1969, and followed a complete shakeup and various dismissals of personnel at the Brake Tag Station because of the discovery of widespread improprieties in the operation of the station. Appellant was not involved therein. Appellant served in the capacity of Motor Vehicle Inspection Supervisor until March 22, 1971, when the Appointing Authority demoted him to Motor Vehicle Inspector II and named a new supervisor. Appellant timely appealed this demotion.
From the evidence presented to this Commission, it was readily apparent that at least two of the various expressed reasons upon which the Appointing Authority based the appellant's demotion fell far short of the intended mark. No discriminatory acts by appellant in the employment of Mrs. Myrtle Mitchell were shown to exist or to have taken place. Mrs. Mitchell, a low-skilled employee, was given a menial task to perform at the Brake Tag Station at the specific request of the supervisor of a federally funded program for a period of twenty-six weeks to enable this employee to earn money to study cosmetology. The superintendent of the federal program, himself, found no evidence of discrimination. No employee of the Brake Tag Station testified as to any discrimination against Mrs. Mitchell. It is difficult to understand on what basis the Appointing Authority believed the treatment afforded Mrs. Mitchell at the Brake Tag Station represented racial discrimination against her by the appellant.
Similarly, although not as categorical, appellant's demotion based in any measure on discrimination by him against the hiring of Messrs. Norwood Slater and Dorsey Joseph was without substance. Although available for work, neither of the foregoing named men answered correspondence from the appellant inquiring of them as to their interest in coming to work at the Brake Tag Station. Both men testified they never received such correspondence and that they had experienced difficulty in receiving mail during the period in which appellant wrote to them. We feel that appellant did all that was required of him in this instance and that he did not intentionally pass over for employment either Slater or Joseph because of their race.
It becomes harder, however, to resolve other alleged reasons and causes which prompted the Appointing Authority to take the action it did. By and large, these reasons and causes are of a generalized rather than a well-defined nature. Basically, it appears to resolve itself into the fact that in the opinion of the Appointing Authority, appellant was neither a leader nor the administrator which those entrusted with the operation of the Department of Safety and Permits, of which the Brake Tag Station is a division, believed necessary for the Motor Vehicle Inspection Supervisor in order to insure a crisp and optimum operation of the Brake Tag Station.
The position of the Appointing Authority was related by Mr. Henry M. Lambert, Deputy Director of the Department of Safety and Permits. Mr. Lambert came to his position in June, 1970. He required *508 some months to orient himself to the operations over which he exercised a supervisory capacity. During this period of orientation he found appellant to be lacking in the qualities he believed essential to the knowledgeable administration of the Brake Tag Station. He failed to find in the appellant's administrative ability those qualities required to produce a sharp, efficient, operation which would give the public its money's worth. He stated that appellant was "just not a leader," "not an administrator" and he believed the City "could get better for the money" and that "the public was entitled to better." Even with more supervision from the top, Mr. Lambert stated he did not think appellant was capable of doing a better job even though appellant might sincerely wish to do so. Parenthetically, it should be noted from the evidence presented this Commission that appellant at no time purposely attempted to turn out what the Appointing Authority obviously considered an unsatisfactory job effort, but that he exerted his best efforts and did the best he could.
Nevertheless, the Appointing Authority found, inter alia, that appellant could not efficiently carry out its suggestions and plans for the operation of the Brake Tag Station with the dispatch it believed necessary, that appellant was prone to follow old policies which a more imaginative administrator would have changed, that appellant permitted subordinates to do tasks which the Appointing Authority felt appellant, himself, should have done; for example, the rating of employees and the presentation of the Brake Tag Station Annual Budget with which appellant apparently manifested neither the expertise nor the sophistication to capably handle himself and that appellant did not sufficiently motivate his subordinates.
These findings of the Appointing Authority and particularly of Mr. Lambert were not arrived at suddenly, capriciously or arbitrarily. In fact, Mr. Lambert who ultimately recommended the action taken by the Appointing Authority, testified that because of a family friendship with the appellant that he was loathe to demote the appellant, but sincerely believed such action to be in the best interests of the public and in the operations of the Brake Tag Station.
Unquestionably, appellant is a sincere and honest employee. We believe he did not only the best he could but also what he believed was right. The evidence reveals there was a positive innovation attributable to appellant when he became supervisor of the Brake Tag Station in placing employees out in front of the station to interview motorists in advance before the vehicle reached the actual inspection line, thereby lessening the waiting period. Certainly appellant must be commended for this action. There is also some evidence that appellant attempted to tighten up certain fleet inspection procedures which attempts were eventually countermanded by the Appointing Authority. But by and large, there was no other innovative, progressive leadership or administration pinpointed by the evidence so as to reflect the enlightened supervision and operation of the Brake Tag Station which the Appointing Authority wanted and envisioned. In essence, the Appointing Authority believed appellant was not the right man for the job. As mentioned above, there was no evidence that this conclusion was arrived at hastily. Nor was there a scintilla of evidence that it was in any manner whatsoever based upon political, religious or racial reason.
This Commission is aware that the Civil Service merit system is frequently criticized for maintaining alleged incompetency in office. In private industry there are very few restraints on an employer in his demotion or termination of an employee who is not producing as the employer believes necessary. In the public sector, an Appointing Authority has much broad discretion in this area also, yet there are certain checks for the protection of the employee against the arbitrary or discriminatory use of said discretion or actions based *509 upon political, racial or religious bias. In the case at bar, we have found neither capricious, arbitrary nor discriminatory use by the Appointing Authority of its discretion. There was no evidence that the demotion did not receive the careful thought and consideration of the Appointing Authority over a period of months before the Appointing Authority finally acted. There was no evidence that the action was politically motivated, nor was there any evidence of political, religious or racial discrimination. In fact, the testimony of the appellant reveals that he understood at least two other persons were eager to have the appellant's job, yet neither of them were appointed to replace the appellant. Furthermore, appellant, himself, testified that he knew of no attempt to demote him based on religious, racial, or political bias against him by the Appointing Authority and none was proven. Under such circumstances it is not for this Commission to replace with its judgment the judgment and wisdom of the Appointing Authority.
FINDINGS OF FACT
1. Appellant did not discriminate against Mrs. Myrtle Mitchell or Messrs. Slater and Joseph in his operations as supervisor of the Brake Tag Station.
2. Appellant sincerely and honestly did the best job he could in the position of supervisor of the Brake Tag Station.
3. The Appointing Authority after deliberate consideration concluded that appellant was not the best man for the position of supervisor of the Brake Tag Station and believed it to be in the best interests of the more efficient, progressive and imaginative operation of the Brake Tag Station and of better service to the public that the appellant should be replaced.
4. The Appointing Authority is vested with broad discretion in the conduct of its operations in behalf of the general public and absent clear evidence of arbitrary and discriminatory acts in the exercise of its discretion, this Commission should not interfere therein or replace the judgment of the Appointing Authority with its judgment in the demotion of an employee, and it will not do so herein.
5. There was no evidence that the action of the Appointing Authority was prompted by or based upon political, religious, racial or economic motives or reasons and we find that it was not, nor was it arbitrary."
As error, the appellant contends that the cause for his dismissal was not expressed in writing with the explicitness required by the Constitution of the State of Louisiana (Article 14, Section 15); that the adoption of the "best man" rule by the Commission is violative of the provisions of the Constitution establishing a Civil Service System and that there is a complete lack of evidence to support cause for the demotion.
The appellant has been in the classified service of the City of New Orleans since 1953. In 1969 widespread irregularities were discovered in the operation of the Brake Tag Inspection Stationinvolving the receipt of gratuities for issuing tags for defective automobiles. The appellant was not involved in these irregularities and in the resultant shakeup of the station, the appellant through Civil Service procedures was appointed to the position of Supervisor effective in February, 1970. A short time later, a new administration came into office and the unclassified position of Director of the Department of Safety and Permits was filled by appointment. In June of 1970 a new Deputy Director, also outside the classified service, was filled by appointment. The chain of responsibility was from the Supervisor to the Deputy Director to the Director. According to his testimony, it took the new Deputy Director a couple of months to become familiar *510 with the operations of the station; and in the latter part of 1970, the Director of the Department gave the appellant an unsatisfactory rating. The Deputy Director testified that this unsatisfactory rating was withdrawn because it was not detailed enough for further action under Civil Service regulations, and in its stead a strong rebuke was issued in a December 22, 1970, communication to the appellant. The December 22, 1970, communication was as follows:
"I hereby substitute the rating of "Satisfactory" for that previously given Mr. Joseph Biggio for 1970 Service Rating and request that the pending Civil Service proceedings be terminated. I take this action, not because I am satisfied, but to provide him one more opportunity to improve his performance.
It is still my opinion that:
A. Mr. Biggio delegates too much authority to employees below the supervisory level;
B. Mr. Biggio does not exercise leadership necessary to motivate his employees and ensure their co-operation;
C. Mr. Biggio's administration has been mediocre, exhibiting lack of ability; and
D. Mr. Biggio does not make decisions adequately and promptly as required by his position.
The Motor Vehicle Inspection Station is a large operation with several functions, requiring the processing of thousands of dollars a day. It requires the best administration available to the City. If Mr. Biggio cannot provide it, it will be my responsibility to find it."
On March 22, 1971, the appellant was demoted for the cause listed in the communication of the same date.
Under the express provisions of the Louisiana Constitution (Article 14, Section 15) a person who has acquired permanent Civil Service status may not be demoted or dismissed except for cause expressed in writing (Section 15(N)(1). The requirement that the cause be expressed in writing has received a strict construction by the Louisiana Supreme Court and absence of proper notification is fatal to the legality of the employer's action. Young v. Charity Hospital of Louisiana at New Orleans, 226 La. 708, 77 So.2d 13; Day v. Department of Institutions, 228 La. 105, 81 So.2d 826; Bennett v. Louisiana Wildlife and Fisheries Commission, 234 La. 678, 101 So.2d 199; King v. Department of Public Safety, 234 La. 409, 100 So.2d 217; and Mayerhafer v. Department of Police of City of New Orleans, 235 La. 437, 104 So. 2d 163. The Constitution also declares that the burden of proof on appeal, as to the facts, is on the employee, but in order to avoid placing an impossible burden on him, the employee must of necessity have something explicit to refute and lacking a statement of fact which is subject to disproof in a legally accepted sense, the cause stated is insufficient to meet legal requirements. Other than the first two causes for the dismissal, which are of no moment in this consideration since the Commission failed to find any proof whatsoever to substantiate them, it cannot be said that the remainder of the March 22 letter of demotion meets the test of explicitness. A reading of the letter shows how well nigh impossible it would be to convincingly disprove such vague and general charges. At most it is a mere conclusion of the Appointing Authority, without giving any factual basis therefor. Such a cause for disciplinary action cannot be said to have sufficiently apprised appellant of exactly what he would be required to disprove in order to meet the burden placed on him on appeal. The Commission recognized this when in speaking of the charges, other than the first two, in its findings it categorized them as follows: "By and large, these reasons and causes are of a generalized rather than a well-defined nature" and repeatedly during the course of the hearing, the Commission persisted in asking the *511 Appointing Authority to furnish it with specific instances of unsatisfactory performance for its considerationall to no avail. Other than the first two causes, the remainder of the March 22, 1971, letter of dismissal fails to meet the Constitutional test and cannot form the basis of a demotion action.
However, since we must discuss and rule on the first two charges which meet the test of explicitness and because of the grave implications that may arise if the "best man" rule enunciated by the Commission goes unanswered, the Court will for the purposes of the following assume that all charges meet the Constitutional test of explicitness.
In Legget v. Northwestern State College, 242 La. 927, 140 So.2d 5, the Supreme Court set forth the principle that in Civil Service cases the appellate courts are called upon to answer only questions of law, and the decisions of the Civil Service Commission are final on the facts. The appellate courts cannot consider the weight or the sufficiency of the evidence, and it is only where there is no evidence that a question of law arises. It is the duty and function of the Commission to determine from the facts whether there exists a substantial relation between the employee's conduct and the efficient operation of the public service and if there is any evidence before the Commission showing that the employee's conduct is prejudicial to the service, its ruling will not be disturbed. It is with this jurisprudence in mind that we examine the determination of the Commission upholding the demotion of the appellant.
The first charge in the demotion letter of March 22 was completely covered and rejected by the Commission in its findings. There can be no argument against the conclusion that no evidence whatsoever was introduced to support any charge of discrimination and this Court, like the Commission, finds it "difficult to understand on what basis the Appointing Authority believed the treatment afforded Mrs. Mitchell at the Brake Tag Station represented racial discrimination against her by the appellant."
The second charge in the demotion letter of March 22 was also found by the Commission to be "without substance." As in the first charge, there is a noticeable lack of investigation of the nature of the charges before taking action thereon. Just as the Commission found no justification whatsoever for these charges, a simple inquiry on the part of the Appointing Authority would have made it readily apparent to that agency that no discrimination whatsoever was practised by the appellant.
The Commission stated that it became harder to resolve the other alleged reasons and causes which prompted the Appointing Authority to take the action it did, and with this this Court can agree. The Commission categorized the remaining charges against appellant in the following language: "Basically, it appears to resolve itself into the fact that in the opinion of the Appointing Authority, appellant was neither a leader nor the administrator which those entrusted with the operation of the Department of Safety and Permits, of which the Brake Tag Station is a division, believed necessary for the Motor Vehicle Inspection Supervisor in order to insure a crisp and optimum operation of the Brake Tag Station." The Commission found that "The Appointing Authority after deliberate consideration concluded that appellant was not the best man for the position of Supervisor of the Brake Tag Station and believed it to be in the best interests of the more efficient, progressive and imaginative operation of the Brake Tag Station and of better service to the public that the appellant should be replaced." The Commission found the appellant to be a sincere and honest employee, who did not only the best he could but also what he believed was right. The Commission praised and commended him for a positive innovative action designed to decrease the waiting period in line and noted that he had attempted *512 to tighten fleet policies only to be countermanded by the Appointing Authority. However, the Commission found that there were "no other innovation, progressive leadership or administration pinpointed by the evidence so as to reflect the enlightened supervision and operation of the Brake Tag Station which the Appointing Authority wanted and envisioned."
The only instance in the record wherein an innovation or suggestion was made to the appellant by the Director or the Deputy Director pertained to a regulation of annual and sick leave during the Christmas Holiday period. The appellant had no control over sick leave and had been thwarted by a previous superior from requiring doctor's certificate in certain instances. Based on his experience, the appellant thought the best time to grant annual leave, within reason, was during the holiday season when the motorists were not concerned with securing a brake tag. When the Appointing Authority notified him by a letter that it wanted a new system, he promptly put a new system into effect. Nowhere else in the record is it established that the appellant failed to implement an innovation presented by the Appointing Authority. Both the Director and Deputy Director were charged with the overall responsibility for the operation of the station; and if these innovations and ideas on progressive management of the station were so readily apparent, it would certainly have behooved them as administrators to put these ideas into writing and charge the appellant with the responsibility of carrying out their ideas. If he failed to carry out their ideas, proper grounds would have been laid for his dismissal.
The Director and Deputy Director are outside the classified system and this is the way the system is designed in order to afford the Mayor control over the policies and direction of the departments of city government. They hold their jobs at the whim of the Mayor. They are there to carry out the policies of the Mayor and are subject to being fired if in the opinion of the Mayor they don't possess the intangible innovative, imaginative, dynamic leadership qualities which will insure the optimum operation of their department. There are no standards or safeguards to insure their continued employment.
However, the classified employee under Civil Service is protected from the arbitrary and capricious exercise of discretion in removing him from his job. A determination that he was not imaginative enough, innovative enough, nor possessed of progressive leadership as defined in the subconscious of the Appointing Authority and that for the money a "better man" could be obtainedin short that he was not the "best man" for the jobis the kind of unbridled, arbitrary action that, if allowed to stand, will toll the death of Civil Service.
No classified employee would be safe in his job if the Appointing Authority were to be permitted to search for the "best man" for every job and to replace the classified employee on such intangibles as leadership, imagination, innovativeness, etc. It is easy to see the chaotic condition which would result if the Appointing Authority were permitted to search out and seek the "best man" for every classified position. The will of the people in passing a constitutionally guaranteed system of Civil Service would thus be ignored and the job protection offered by the system would cease to exist.
On its face the "best man" theory enunciated by the Commission in upholding the demotion of the appellant is arbitrary and cannot be allowed to stand as a matter of law and is violative of the Constitution of the State of Louisiana.
Accordingly, the ruling of the Civil Service Commission for the City of New Orleans is reversed and set aside. It is ordered that appellant, Joseph Aloysius Biggio, be restored to his former position as Motor Vehicle Inspection Supervisor with *513 the Department of Safety and Permits of the City of New Orleans with full restoration of all rights.
Reversed.